[Nos. D058491, D058492. Fourth Dist., Div. One. Dec. 5, 2011.]

KAISER FOUNDATION HOSPITALS, Plaintiff and Respondent, v. JEFF WILSON, Defendant and Appellant.

COUNSEL

Patrick L. McCrary for Defendant and Appellant.

Sean Patrick Reis for Plaintiff and Respondent.

## OPINION

### AARON, J.—

## I.

## INTRODUCTION

Defendant Jeff Wilson appeals from orders of the trial court enjoining him from committing further acts of violence or making threats of violence against two employees of plaintiff, Kaiser Foundation Hospitals (Kaiser).

On appeal, Wilson contends that the trial court improperly considered hearsay evidence in deciding to issue a restraining order against him pursuant to Code of Civil Procedure[1] section 527.8, a provision that permits employers to seek injunctions preventing workplace violence against their employees. Wilson contends that the hearsay evidence was inadmissible. He further argues that the only admissible nonhearsay evidence that Kaiser presented in support of its request for two workplace violence injunctions was insufficient to support the court's determination that there existed a credible threat of violence, such that the injunctions should issue.

■ We conclude that the trial court did not err in considering hearsay evidence in determining that Wilson made a credible threat of violence and that great harm might result to an employee of Kaiser, such that it was proper to issue an injunction prohibiting Wilson from further unlawful violence or threats of violence. We therefore affirm the orders of the trial court.

---

[1] Further statutory references are to the Code of Civil Procedure unless otherwise indicated.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Wilson is married to Diane Younge-Barnes, a former employee of Kaiser. On April 7, 2010, Younge-Barnes's employment with Kaiser was terminated.

On July 2, 2010, Kaiser filed two petitions seeking injunctions prohibiting Wilson from committing acts of violence or making threats of violence against two of its employees, Arlene Gibson and Marites Arendon, pursuant to section 527.8.[2]

Kaiser submitted Arendon's declaration in support of its application for a temporary restraining order as to Arendon. In her declaration, Arendon recounted an incident that occurred on May 25, 2010, in which Younge-Barnes and Wilson came to the Kaiser facility to visit Younge-Barnes's adult daughter, who had just given birth. After someone told Younge-Barnes that she could not be in the nurse's area, Wilson began yelling at another employee, Diane Doyle, telling her that he was " 'going to put [her] and Marites down.' " Arendon also stated that on May 28, 2010, Wilson and Younge-Barnes again were present at the Kaiser facility, and that Younge-Barnes again had to be told not to be in the nurse's area. In response, Wilson said that he was " 'going to flip his lid' " and " 'do something that he would regret.' " Arendon further stated that on June 26, 2010, Wilson was detained by police after making threats that he was going to " 'kill someone.' " The following day, Younge-Barnes told a therapist that Wilson had been making threats that he was going to shoot Gibson. Although Arendon asserted that she had "personal knowledge" of the facts to which she attested, it is not clear whether she witnessed any or all of these incidents, or, if not, how she obtained her knowledge of these incidents.

Kaiser submitted Gibson's declaration in support of its application for a temporary restraining order as to Gibson. In that declaration, which was substantially similar to Arendon's declaration, Gibson recounted an incident that occurred on May 25, 2010, in which Younge-Barnes and Wilson came to the Kaiser facility to visit Younge-Barnes's adult daughter who had just given birth. After someone told Younge-Barnes that she could not be in the nurse's area, Wilson began yelling at another employee, Diane Doyle, telling her that he was " 'going to put [her] and Marites down.' " Gibson also stated that on May 28, 2010, Wilson and Younge-Barnes again were at the Kaiser facility, and that Younge-Barnes again had to be told not to be in the nurse's area. In response, Wilson said that he was " 'going to flip his lid' " and " 'do

---

[2] The appeals from both petitions have been consolidated.

something that he would regret.' " Gibson also recounted that on June 26, 2010, Wilson was detained by police after making threats that he was going to " 'kill someone,' " and that the next day, Younge-Barnes told a therapist that Wilson had been making threats that he was going to shoot Gibson. Although Gibson, like Arendon, asserted that she had "personal knowledge" of the facts to which she was attesting, it is not clear whether she was present at any or all of these incidents, or, if not, how she obtained her knowledge of these incidents.

At the hearing for the permanent injunction pursuant to section 527.8, subdivision (f), Arendon testified that on April 7, 2010, the day Younge-Barnes's employment with Kaiser was terminated, Arendon, who was the manager on duty at the time, received a telephone call from Wilson. Arendon testified that Wilson was irate, and that he said to Arendon, " 'If something happened to my wife who just stepped out of the hospital right now, you are going to pay for this.' " Arendon attempted to get more information from Wilson, but he was "very, very upset." Arendon stated that Wilson's telephone call "alarmed" her.

Arendon also testified that on another occasion, Wilson accompanied Younge-Barnes to the hospital to visit Younge-Barnes's adult daughter, who had just given birth. While Arendon was testifying, Wilson's attorney requested that the court question Arendon as to whether she had personal knowledge of this incident, or rather, had simply heard about it from someone else. The court declined to do so, and instead asked Arendon what she saw Wilson do. Arendon stated that she did not see Wilson "do it," but that she had been told "by the manager who stopped them not to do anything at the nurse's station." Arendon then continued, "He was going to put Diane Doyle, the manager at the time, and me, Marites, down like he was going to kill us. So when I hear things like that—it doesn't happen all the time at the hospital, in a workplace, in our workplace. It alarms me up to now. I'm still very scared."

The court then heard testimony from Arlene Gibson, who told the court, "I received a phone call from the police department. And this was after [Wilson's] wife, Diane, was placed at Sharp Mesa Vista, and the officer told me, asked me have you—." At this point, Wilson's attorney objected that Gibson's anticipated testimony was hearsay. The court said, "I'll overrule it for now. Let me hear the version, and I'll have to give it the weight it deserves, which is not going to be a lot."

Gibson continued, stating that the police officer told her that Younge-Barnes had reported that her husband was going to shoot Gibson. The court clarified with Gibson, "But he hasn't said anything to you directly or done

anything to you directly?" Gibson responded, "No," and explained that when she tried to call the officer back, she was informed that the police do not file a report for a "terrorist threat," but that they are obligated to inform a potential victim.

The trial court then asked counsel for Kaiser, "Do we have any direct evidence of this, counsel?" The attorney pointed to Arendon's testimony concerning Wilson's threatening telephone call to her on April 7, 2010.

After Kaiser presented this evidence, Wilson testified. He admitted that he had called the Kaiser hospital on April 7, 2010, but denied that he had made any threatening remarks during that call.

After hearing argument from the attorneys, the trial court stated: "The court will rule as follows: Based upon the evidence presented, the court does find clear and convincing evidence of a threat, threats of physical violence against Kaiser employees, those that are present and potentially others. [¶] I am going to order a three-year permanent injunction in this matter. I am going to order Jeff Wilson to have no contact or communication with Kaiser Foundation Hospital, any subsidiary, any employee including those requested to be protected. Order him to remain 200 yards away from any Kaiser facility, have no contact, no communication, no telephone, no electronic communication whatsoever. . . ."[3]

On October 1, 2010, the trial court entered orders prohibiting Wilson from engaging in further violence or threats of violence against Gibson and Arendon.

Wilson filed timely notices of appeal from the trial court's orders.

## III.

## DISCUSSION

■ On appeal, Wilson contends that the trial court erred in considering hearsay evidence during the hearing that was held pursuant to section 527.8, subdivision (f). Section 527.8, subdivision (a) permits an employer to seek "a

---

[3] Upon being informed that Kaiser had requested only that the court limit Wilson's contact to a single Kaiser facility—the one where Arendon and Gibson worked-and not all Kaiser facilities, the trial court amended its ruling to apply only to that particular Kaiser facility. Pursuant to the agreement of both parties' attorneys, the court eventually entered an order requiring Wilson to provide 24 hours' notice to member services if he was going to be at the facility at issue for scheduled treatments, and prohibiting him from going to the fourth floor, where the labor and delivery unit was located.

temporary restraining order and an injunction on behalf of [an] employee [who has suffered unlawful violence or a credible threat of violence carried out at the workplace]." Upon the filing of a petition for an injunction, the employer may obtain a temporary restraining order if the plaintiff "files an affidavit that, to the satisfaction of the court, shows reasonable proof that an employee has suffered unlawful violence or a credible threat of violence by the defendant, and that great or irreparable harm would result to an employee." (§ 527.8, subd. (e).)

Subdivision (f) of section 527.8 provides the procedure that governs a hearing on the petition for an injunction. That subdivision provides: "Within 15 days of the filing of the petition, a hearing shall be held on the petition for the injunction. The defendant may file a response that explains, excuses, justifies, or denies the alleged unlawful violence or credible threats of violence or may file a cross-complaint under this section. At the hearing, the judge shall receive any testimony that is relevant and may make an independent inquiry. Moreover, if the defendant is a current employee of the entity requesting the injunction, the judge shall receive evidence concerning the employer's decision to retain, terminate, or otherwise discipline the defendant. If the judge finds by clear and convincing evidence that the defendant engaged in unlawful violence or made a credible threat of violence, an injunction shall issue prohibiting further unlawful violence or threats of violence. An injunction issued pursuant to this section shall have a duration of not more than three years. At any time within the three months before the expiration of the injunction, the plaintiff may apply for a renewal of the injunction by filing a new petition for an injunction under this section."

Wilson contends that all of the usual rules of evidence apply to a hearing held pursuant to section 527.8, subdivision (f), including Evidence Code section 1200, which makes hearsay evidence inadmissible.[4] He argues that there was only one item of evidence presented at the hearing against him that was not hearsay evidence—Arendon's testimony that Wilson threatened her on the telephone, stating that she " '[was] going to pay.' " Wilson contends that this evidence was insufficient to support the trial court's determination that Wilson made a credible threat of violence against either of the Kaiser employees on whose behalf Kaiser filed the two petitions.

Neither party has cited to relevant legal authority regarding the extent to which the rules of evidence do or do not apply to hearings held pursuant to section 527.8, subdivision (f), and we have found very little guidance in the

---

[4] Evidence Code section 1200 provides in relevant part:

"(a) 'Hearsay evidence' is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated.

"(b) *Except as provided by law*, hearsay evidence is inadmissible." (Italics added.)

case law. However, section 527.8, subdivision (f) specifically states that the trial court "shall receive *any testimony that is relevant*" at a hearing on a petition filed pursuant to that statute. (Italics added.) The plain language of this provision suggests that the Legislature intended to permit a trial court to consider *all* relevant evidence, including hearsay evidence, when deciding whether to issue an injunction to prevent workplace violence pursuant to section 527.8.

The language of Evidence Code section 1200 does not convince us that hearsay evidence should not be admitted and considered by a court in hearings conducted pursuant to section 527.8, subdivision (f). Evidence Code section 1200, subdivision (b) provides that hearsay evidence is generally inadmissible, "[e]xcept as provided by law." Subdivision (f) of section 527.8 appears to be one of the exceptions to Evidence Code section 1200, subdivision (b), in that it mandates that the court consider, without limitation, "any testimony that is relevant." In other words, as long as the hearsay evidence presented at a section 527.8 hearing is relevant, the court is to consider it.

The unique context of a hearing pertaining to a workplace violence injunction supports our conclusion. Specifically, injunctive proceedings under section 527.8 are intended to parallel those under section 527.6, which are procedurally truncated, expedited, and intended to provide quick relief to victims of civil harassment. (*Robinzine v. Vicory* (2006) 143 Cal.App.4th 1416, 1423, 1424 & fns. 7, 8 [50 Cal.Rptr.3d 65] [§ 527.8 enacted to allow employers to seek protections comparable to those offered under § 527.6]; *Thomas v. Quintero* (2005) 126 Cal.App.4th 635, 648 [24 Cal.Rptr.3d 619]; see also *Schraer v. Berkeley Property Owners' Assn.* (1989) 207 Cal.App.3d 719, 730 [255 Cal.Rptr. 453] (*Schraer*) [court must allow live testimony in harassment proceedings but may impose reasonable limitations necessary to conserve expeditious nature of procedure under § 527.6].) Indeed, a proceeding for an injunction under section 527.6 (and, correspondingly, § 527.8), need not proceed as a "full-fledged evidentiary hearing with oral testimony from all sides." (*Schraer, supra*, at p. 733, fn. 6.) Rather, the hearing may be based on affidavits or declarations, which are themselves a form of hearsay evidence. (See *ibid.*)

In addition, a petition for an injunction under section 527.8 is heard by the court, not a jury, and is decided by the clear and convincing standard of proof. Trial judges are particularly aware of the potential unreliability of hearsay evidence, and are likely to keep this in mind when weighing all of the evidence presented.[5]

---

[5] The trial court in this case indicated that it would not give significant weight to the hearsay evidence that was presented, stating, "I'll have to give it [the hearsay evidence] the weight it deserves, which is not going to be a lot."

■ Considering the fact that the purpose of the statute is to prevent violence in the workplace, the expedited nature of the proceeding contemplated by the statute, and the Legislature's directive that the trial court shall receive all relevant testimony without qualification, we conclude that the testimony that a trial court may consider in making a ruling on a petition pursuant to section 527.8 is not limited to nonhearsay testimony. The language that the Legislature used reflects an intention to give trial courts wide latitude in determining what evidence to credit when considering a request for an order to protect employees from workplace violence. Hearsay evidence clearly may be relevant, and if hearsay evidence *is* relevant, section 527.8 requires that the court receive it. We therefore conclude that the trial court did not err in considering hearsay evidence when it ruled on Kaiser's petitions for injunctions against Wilson prohibiting further unlawful violence or threats of violence.[6]

## IV.

## DISPOSITION

The orders of the trial court are affirmed. Respondent shall recover costs.

McDonald, Acting P. J., and O'Rourke, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 14, 2012, S199430. Werdegar, J., did not participate therein.

---

[6] Wilson does not challenge the sufficiency of the evidence to support the trial court's ruling, if the court was correct in considering hearsay evidence. Rather, he contends only that the trial court was not permitted to consider hearsay evidence, and that the only nonhearsay evidence that Kaiser presented was insufficient to support the trial court's conclusion that Wilson had made a credible threat of violence. Because we conclude that the trial court did not err in considering the hearsay evidence, there remains no question that the evidence was sufficient to support the trial court's ruling.