Filed 1/14/16  San Bernardino County Law Library v. Melek CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| SAN BERNARDINO COUNTY LAW LIBRARY,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>JACQUES MELEK,<br><br>　　　Defendant and Appellant. | E061079<br><br>(Super.Ct.No. CIVRS1401404)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Gilbert G. Ochoa, Judge.  Affirmed as modified.

Jacques Melek, in pro. per. for Defendant and Appellant.

Gresham Savage Nolan & Tilden, Kevin K. Randolph, and Amy J. Osborne, for Plaintiff and Respondent.

Jacques Melek appeals from an order granting a workplace violence restraining order after hearing, granted pursuant to Code of Civil Procedure section 527.8.  On March 10, 2014, the San Bernardino County Law Library (Library) filed a petition

seeking a temporary restraining order (TRO) and a permanent injunction against Melek, based on his history of harassment and the future threat to Library employees. At an ex parte hearing held the same day the petition was filed, the trial court granted the TRO. The court later granted the petition and enjoined Melek from engaging in certain activities related to the Library for three years.

On appeal, Melek argues that the trial court lacked personal jurisdiction over him due to improper service, that there was a defect in subject matter jurisdiction because the Library failed to exhaust administrative remedies, that the Library lacks standing, and that the Library failed to adequately prove irreparable injury in support of its request for a permanent restraining order. We reject each of these contentions, as well as the other allegations that appear in Melek's briefs, and affirm the order of the trial court.

FACTUAL AND PROCEDURAL BACKGROUND

In support of the petition, the Library provided a declaration from its executive director, Lawrence R. Meyer. Meyer alleged that there had been hundreds of employee complaints about Melek, who was "frequently disruptive, aggressive, and unpredictable." Meyer also stated he believed "Mr. Melek is extremely unpredictable in his temperament and could pose a threat to [him]self or [his] employees at any time." According to Meyer, the Library had to hire an additional part-time staff member so female employees would not be unattended at one of the library branches. Meyer made this decision "due to [his] safety concerns for [his] staff following their reporting of incidents of Mr. Melek's aggressive and unpredictable behavior." Finally, Meyer attached copies of the following correspondence: First, Melek wrote a letter accusing Meyer of committing

2

hate crimes and embezzling funds. At the direction of the Library's board of directors, the Library's counsel sent Melek a letter expressing concerns about his behavior and asking him to conform to "reasonably acceptable behavior standards" in the future. Melek's response was to take the Library's counsel's letter to him and send it back to the Library with handwritten notes about how the letter was "obnoxious" and "also a mail fraud," with which he included a handwritten note demanding proof of service of the Library's counsel's letter on him and of his previous letter on each member of the board of trustees, plus various information about the Library's board and its counsel.

Also attached to the Library's petition was a declaration from a Library employee, D. Meda Ingram. She described Melek, a patron with whom she "became familiar," as "frequently demanding, verbally abusive, very angry, disruptive, unpredictable, and intimidating toward" her. Ingram also averred that Melek "is always upset or enraged." On one occasion, Melek became so angry that an attorney she was helping "had to lunge for Mr. Melek to prevent him from physically contacting" her. On another occasion, Melek became angry when he could not make the photocopier function properly and dropped a book "very hard, almost slamming it," onto the machine's glass so hard that Ingram thought the glass would break. When Ingram offered to show Melek which button to push if he would step away from the photocopier, he yelled contradictory things at her. Ingram also alleged she had seen Melek in the parking lot "looking for and inspecting [her] car," which he would have recognized as hers because he was sometimes there waiting when she arrived at work. Ingram admitted she only submitted the declaration "reluctantly" because she is scared that Melek "will respond violently." The

3

thought of testifying in court and answering questions Melek might ask "makes [Ingram's] blood run cold."

As indicated *ante*, the trial court granted the TRO on the day the Library filed the petition. This occurred at an ex parte hearing held without notice to Melek. At the same hearing, the trial court set March 26, 2014, as the date to adjudicate the petition. On that date, counsel for the Library requested a continuance because Melek had not yet been served. The trial court granted the request and set a new hearing date for April 14, 2014, but it also warned that the restraining order would expire on April 2, 2014.

On April 3, 2014, the Library filed a proof of service alleging a registered process server had served Melek on March 31, 2014. The documents served included the petition, the TRO, a blank response and blank proof of service of the response, a notice of court hearing, and an instructional sheet on how to respond to the petition. In his opening brief, Melek admits that service of these documents occurred on March 31, 2014. In addition, the record on appeal contains a letter he wrote to the Library's counsel, which is dated March 31, 2014, and in which he objected to the next scheduled hearing date, thereby acknowledging receipt of documents regarding the petition.

Melek did not appear at the hearing on April 14, 2014. The trial court granted an order restraining Melek from going within 100 yards of any Library branch or employee, or engaging in other specified behavior, for three years. The minute order from the hearing states, in part: "Court finds no additional testimony is needed."

4

As previously noted, Melek's four major arguments on appeal relate to service on him and the personal jurisdiction that resulted; the Library's alleged need to exhaust administrative remedies; the Library's own lack of standing; and the sufficiency of the evidence supporting the permanent restraining order. We reject each of these in turn and briefly dispose of Melek's other issues and allegations along the way.

*1. The trial court had personal jurisdiction over Melek because service was proper*

As indicated *ante*, Melek admits being served "with the pertinent documents in this matter as listed on the proof of service filed with [the] court." His argument regarding service is premised on the assumption that the Library could not proceed without having an order to show cause issued and served on him. This assumption fails for the following reasons.

Code of Civil Procedure section 527 and California Rules of Court, rule 3.1150, govern requests for preliminary injunctions in civil cases, generally. In contrast, Code of Civil Procedure section 527.8 and California Rules of Court, rule 3.1152, govern cases seeking no relief other than a restraining order to prevent violence in the workplace. If a party in an ordinary civil case obtains a preliminary injunction without notice to the restrained party, the matter "shall be made returnable on an order requiring cause to be shown why a preliminary injunction should not be granted." (Code Civ. Proc., § 527, subd. (d)(1); see Cal. Rules of Court, rule 3.1150(a).) In such instances, the restrained person must be served with, among other things, "the order to show cause stating the date, time and place of the hearing." (Code Civ. Proc., § 527, subd. (d)(2).) Moreover, if

5

the restrained person has not yet appeared in the action, the order to show cause must be served in the same manner as a summons. (Code Civ. Proc., § 527, subd. (d)(2).)

In contrast, the statute and rule of court governing applications for workplace violence restraining orders under Code of Civil Procedure section 527.8 make no mention of an order to show cause. (Code Civ. Proc., § 527.8; Cal. Rules of Court, rule 3.1152.) Rather, a "*hearing* shall be held on the petition for the injunction" within 21 days, or 25 with good cause appearing to the court, of the granting or denying of a temporary order. (Code Civ. Proc., § 527.8, subd. (h), italics added.) Because no order to show cause need issue if a TRO is granted on a petition for a workplace violence restraining order, an order to show cause is not among the documents that must be served on the person to be restrained. (Code Civ. Proc., § 527.8, subd. (m) [requiring service only of the petition, the TRO, and notice of the hearing on the petition]; Cal. Rules of Court, rule 3.1152(c).)

As just explained, the Library did not need to obtain an order to show cause before the trial court could assert jurisdiction over Melek. His main attack on the court's personal jurisdiction over him therefore fails.

Melek also contends the TRO is void because the trial court issued it at an ex parte hearing without any notice to him. The TRO expired on its own terms on April 2, 2014. Moreover, the order from which Melek appealed is not the TRO, but the permanent injunction the court entered on April 14, 2014. Melek's arguments about the lack of notice of the ex parte at which the trial court granted the TRO are therefore moot. In any event, subdivision (f) of Code of Civil Procedure section 527.8 explicitly allows the issuance of a TRO "without notice under this section." Melek has not addressed this

6

provision or shown why it did not justify declining to provide notice of the ex parte hearing to him.

Melek also argues it was error for the trial court to conduct the ex parte hearing without notice to him because there was no proof that he was so dangerous that notice could not be safely given. However, he again asks us to apply Code of Civil Procedure section 527, which governs TRO's and preliminary injunctions in ordinary civil cases, to a petition for a TRO to enjoin workplace violence, which is governed by Code of Civil Procedure section 527.8. Melek is correct that subdivision (c)(1) of Code of Civil Procedure section 527 requires, before a TRO may issue without notice to the restrained party in an ordinary civil case, proof that "great or irreparable injury will result to the applicant before the matter can be heard on notice." However, Code of Civil Procedure section 527.8, subdivision (f), contains no such requirement and instead reads: "A request for the issuance of a temporary restraining order without notice under this section shall be granted or denied on the same day that the petition is submitted to the court." We therefore discern no error in the trial court's granting the TRO without notice to Melek, even without proof of imminent danger.

Because they appear related to his complaints about the lack of notice of the TRO, we now address some of the accusations Melek makes against the trial judge and counsel for the Library. For example, Melek makes broad-ranging accusations of fraud, collusion or bribery between counsel for the Library and the trial judge. However, no evidence in the record supports the conclusion that any such misdeeds occurred.

7

As indicated *ante*, there was nothing improper about having the TRO hearing on the day the petition was filed. (Code Civ. Proc., § 527.8, subd. (f).) Similarly, although Melek insists the small numbers at the bottom of many of the pages of court documents the Library filed prove that funds were embezzled and maliciously routed to the Library's counsel, we see nothing in the record from which to draw such an inference. Melek goes so far as to assert that the trial judge "set out to kill [him] on Thanksgiving Day," causing him to call the police and make a report, but no evidence of this fact appears in the record, either. The same is true of Melek's repeated reference to the trial judge as disqualified in some way, or as an "ex-judge," and also of his allegation that the trial judge and the Library's attorneys conspired to have him arrested even though he is a disabled senior citizen. Finally, Melek accuses the trial court of acting "sua sponte" and making orders against him on "the court's own motion." However, he provides no citations to the record to support these conclusions, and we see no indication that the court did anything improper in adjudicating a petition that was filed and presented to it. Melek further insists the trial judge and counsel for the Library acted in collusion by having the petition heard without proof of assignment to the judge who heard it. He has offered no authority requiring a court to provide written proof of the judicial officer to whom a petition is assigned, and we are aware of none.

For the foregoing reasons, Melek's contentions regarding service of the petition and TRO on him fail. The trial court had personal jurisdiction over Melek.

8

## 2. *The Library did not need to exhaust administrative remedies*

Melek contends the Library failed to exhaust administrative remedies based on his interpretation of Education Code sections 19479 and 19645. The former requires libraries to "be forever free to the inhabitants and nonresident taxpayers of the library district," and authorizes libraries to fine or exclude people who violate rules established by the library's board of trustees. (Ed. Code, § 19479.) Education Code section 19645 allows a board of library trustees to establish and enforce rules "necessary for the administration, government, and protection of the library under its management, and all property belonging to it."

Melek asserts the employees who are protected by the restraining order had the ability to ask the Library's board of trustees to file complaints against him under either statute and contends their failure to do so means the court lacks jurisdiction because administrative remedies were not exhausted. This argument fails on multiple levels. First, the Education Code sections on which Melek relies apply to library districts, which are governed by the Education Code (Ed. Code, § 19400 et seq.), but not to law libraries, which are governed by the Business and Professions Code (Bus. & Prof. Code, § 6300 et seq.) Second, even if Education Code sections 19479 and 19645 applied in some way, Melek failed to show what remedies either statute requires the Library or its employees to exhaust. He has certainly not proved that either section provides a private right of action under which the Library or any of its employees could have sued him instead of pursuing a workplace violence restraining order. There is no merit to Melek's argument about exhaustion of administrative remedies.

9

*3. The Library qualifies as an "employer" with a minor change in name*

Melek next argues the Library is not an "employer" within the meaning of Code of Civil Procedure section 527.8 because it is nothing but real property that is managed by its board of trustees. Melek makes a valid point; The Business and Professions Code authorizes the establishment of a board of law library trustees to govern the law library in each county, rather than the law library itself. (Bus. & Prof. Code, § 6300.)

Melek's opening brief acknowledges that he could have been sued by the Library's board of trustees, even if the Library was not a proper plaintiff. What Melek fails to demonstrate is that he was prejudiced in any way by the naming of the Library instead of its board of trustees as the party seeking a restraining order. Rather, Melek acknowledged receipt of the petition and indicated he was aware of the date set for the hearing thereon. Although he raised the issue of the Library's standing, he gave no indication that he was confused about who had requested the restraining order. In fact, Melek's opening brief admits that the Library's "board of trustees is the party who can sue and be sued," and his reply brief makes similar statements.

"The court must, in every stage of an action, disregard any error, improper ruling, instruction, or defect, in the pleadings or proceedings which, in the opinion of said court, does not affect the substantial rights of the parties." (Code Civ. Proc., § 475.) Rather than reversing the judgment in this case due to the misnomer to which Melek calls our attention, we simply amend the judgment by substituting the Board of Trustees of the San Bernardino County Law Library as the plaintiff. (See, e.g., *Hernam Singh v. Cross* (1922) 60 Cal.App 324, 325 [judgment amended to substitute name of representative of

10

estate of deceased partner after judgment entered in favor of that deceased partner].)  For the reasons just stated, this act will not prejudice Melek.

    4.   *Substantial evidence supports the judgment*

Melek's final main contention is that insufficient evidence supports the judgment. Much of this contention hinges on the fact that the minute order from the hearing at which the trial court entered the permanent injunction states, "Court finds no additional testimony is needed."  Because no witnesses appear to have testified at the hearing, Melek assumes the trial court received no evidence of any kind supporting the injunction. We disagree.

"[A] proceeding for an injunction under [Code of Civil Procedure] section 527.6 (and, correspondingly, § 527.8), need not proceed as a 'full-fledged evidentiary hearing with oral testimony from all sides' " and may instead proceed entirely on declarations. (*Kaiser Foundation Hospitals v. Wilson* (2011) 201 Cal.App.4th 550, 557.)  The petitioner must prove "a credible threat of violence from any individual, that can reasonably be construed to be carried out or to have been carried out at the workplace." (Code Civ. Proc., § 527.8, subd. (a).)

In this case, the Library's executive director submitted a declaration stating there had been hundreds of employee complaints about Melek and that he had to hire an additional part-time staff member so female employees would not be unattended at one of the library branches.  In addition, a library employee filed a declaration asserting that Melek had been angry and intimidating toward her in her capacity as a library employee on many occasions, that she had seen him appearing to look for her car in the parking lot,

11

and that she once required the intervention of an attorney patron to stop Melek from actually laying hands on her. Because he wrongly insists oral testimony was required at the hearing on the permanent restraining order, Melek makes no effort to explain why this evidence is insufficient. We find that it is because the declarations constitute evidence that Melek presented a credible threat of violence in a workplace. (Code Civ. Proc., § 527.8, subd. (a).)

Melek also argues the trial court was barred by law from using the same evidence to support the TRO and the permanent restraining order. However, the authority he cites for this proposition makes no such holding. In *Paul v. Allied Dairymen, Inc.* (1962) 209 Cal.App.2d 112 (*Paul*), the court held that it was improper to rule on the merits of a case at a hearing on a preliminary injunction, and it noted that a trial court may not enter a permanent injunction at a hearing on a preliminary injunction unless the defendant defaults in the pleadings. (*Id.* at pp. 121-122.) Nowhere did the court hold that a trial court must use different evidence to support a TRO and a preliminary injunction. Even if it had, the holding would likely be inapposite, because *Paul* was not a case involving an injunction to enjoin workplace violence under Code of Civil Procedure section 527.8. (*Id.* at pp. 118-119 [complaint sought order restraining defendants from purchasing, handling or selling milk within California].) Melek also cites *Anderson v. Joseph* (1956) 146 Cal.App.2d 450 (*Anderson*), but we cannot discern for what purpose. In that case, the issue was whether an appeal should be dismissed when it purported to be from the granting of an injunction but no injunction had actually been entered. (*Id* at pp. 453-454.) It is true that *Anderson* noted the principle that a court cannot determine the merits of an

ordinary civil action at a hearing on a preliminary injunction (*Id.* at p. 454), but this case is not an ordinary civil action: it is a request for nothing but a permanent restraining order. Finding no authority to the contrary, we see no reason why the trial court could not rely on the same declarations to support both the TRO and the permanent injunction.

Melek then uses the fact that no court reporter was present at the hearing as a basis for accusing counsel and the trial judge of fraud, collusion, and bribery. He also argues the facts that the petition was granted and that the injunction was reported to law enforcement to support his conspiracy theory. Melek has cited no authority requiring a court reporter to be present at the hearing. In fact, California Rules of Court, rule 3.1310, explicitly considers the possibility that trial courts may not provide court reporters at all hearings. In addition, and for the reasons stated *ante*, the record on appeal does not support a finding that fraud, collusion, or bribery occurred. As just discussed, the declarations attached to the petition were sufficient to support the injunction, so we may not infer that fraud, collusion, and bribery occurred just because the trial court granted the injunction. Finally, Code of Civil Procedure section 527.8, subdivision (q)(1) and (q)(2), require submission of a workplace violence restraining order to law enforcement by either counsel or the court. Setting aside that we see no evidence of a report to law enforcement in the record on appeal, we may infer no fraud, collusion, or bribery from the fact that the court may have complied with the law.

The only other direct attack we find on the sufficiency of the evidence supporting the injunction is that the trial court erroneously broadened the order to include all employees. We discern no error. The declaration from the Library's Executive Director

13

asserts that Melek had caused hundreds of complaints by multiple employees. We see, and Melek has provided, no reason why the injunction is overbroad just because it protects all of the Library's employees.

Melek's opening brief also obliquely complains that the trial court did not require an undertaking when it granted the permanent injunction. No undertaking was required because the Library qualifies as, "A county, city, or district, or public authority, public agency, or other political subdivision in the state, or an officer of the local public entity in an official capacity or on behalf of the local public entity." (Code Civ. Proc., § 995.220, subd. (b); see Code Civ. Proc. § 529, subd. (b)(3); Bus. & Prof. Code, § 6300.) The lack of an undertaking is consequently not a reason to reverse the granting of the permanent injunction.

Melek's reply brief argues, for the first time, that Ingram's declaration in support of the petition evidenced "consciousness of guilt" when it stated that "the thought of testifying in court and having Mr. Melek ask [her] questions makes [her] blood run cold." The reply brief makes two other new points: Melek contends the Library needed to produce the complaints it had allegedly received about him, and he insists he could not find a declaration in the court's file that was sworn under penalty of perjury. "The salutary rule is that points raised in a reply brief for the first time will not be considered unless good cause is shown for the failure to present them before." (*Balboa Ins. Co. v. Aguirre* (1983) 149 Cal.App.3d 1002, 1010.) In keeping with this principle, we do not consider these issues on their merits.

14

Even were we to do so, these claims fail. Nothing in the record on appeal requires or even supports a conclusion that Ingram was knowingly guilty of something instead of the more reasonable inference that she was, as she averred in the declaration, afraid of Melek. In addition, Melek cites no authority preventing the Library's Executive Director from referring to complaints received about Melek, and, as discussed *ante*, the declarations attached to the petition would constitute substantial evidence supporting the judgment even if the language about receiving complaints were absent. Finally, we do not know what Melek means when he says he could not find sworn declarations. Both declarations to which we have referred in this opinion were properly attested.

DISPOSITION

The judgment is affirmed as modified to replace the name of the petitioner as captioned with the name, "The Board of Trustees of the San Bernardino County Law Library."

Plaintiff and respondent is awarded its costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

HOLLENHORST
Acting P. J.

KING
J.

15