Filed 12/23/20  Banda v. Wash CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| MARIA BANDA,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JOHN WASH,<br><br>Defendant and Appellant. | F076986<br><br>(Super. Ct. No. 13CECG03846)<br><br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br>[NO CHANGE IN JUDGMENT] |

**THE COURT:**

It is hereby ordered that the nonpublished opinion filed on December 1, 2020, be modified as follows:

1.　　At the top of page 4, the second and third full sentences on the page beginning "Maria asserted" and "She also alleged" are deleted and replaced with the following sentences:

Attachments to Maria's request on mandatory Judicial Council form CH-100 asserted, among other things, that John "is continually and with increasing severity stalking, committing surveillance, harassing, intimidating, threatening, menacing, [and] intentionally injured (Maria Banda)" and, one evening, she went to shut the gate securing her home and

business, the gate had been taken off its hinges by John without her prior knowledge, and the gate fell on her, injuring her head and spinal area. An attachment also asserted John had taken down gates that protected Maria's home and business from intruders such that she had lost inventory to thieves and perhaps John himself.

2. On page 7, the following sentences are added to the end of the first paragraph:

Therefore, the condition stated in the July 6, 2015 preliminary injunction order has not been satisfied and, as a result, the terms of the injunction have not gone into effect. Furthermore, nothing in this opinion or this court's prior opinions should be interpreted as implying the terms of the preliminary injunction are enforceable without the posting of a bond.

3. On page 7, the following sentence is added to the end of footnote 4:

Nothing in John's petition for rehearing convinces us that those issues could or should be resolved by this court in this appeal.

4. On page 8, the second full paragraph, after the seventh sentence ending in "restraining order" the following sentence is inserted.

We note this evidence of John's direct violation of the terms of the restraining order included, but was not limited to, Maria's testimony that on July 5, 2015, John and Guy Hutchins were on an ATV using the driveway on the north side of her house and were within the 200-yard protected area.

5. On page 8, second full paragraph, form a new paragraph starting with the sentence beginning "The court said John 'essentially conceded …'"

6. On page 24, insert the following sentences at the end of the paragraph ending in "orchards is overbroad":

The contention in John's petition for rehearing that the restraining order does not apply to him when he is in his own work area is incorrect. As written, it does apply to him in that area and its application is one of the reasons the restraining order should be modified. If it did not apply, there would be no need to modify the restraining order. Furthermore, the overbreadth of the order does not excuse John from complying with its terms. The proper remedy is not ignoring the terms, but to seek their modification.

2.

There is no change in the judgment.

Appellant's petition for rehearing filed on December 16, 2020, is hereby denied.


FRANSON, Acting P.J.

WE CONCUR:


SMITH, J.


DESANTOS, J.

Filed 12/1/20  Banda v. Wash CA5 (unmodified opinion)

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| MARIA BANDA, | F076986 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 13CECG03846) |
| JOHN WASH, | **OPINION** |
| Defendant and Appellant. | |

## THE COURT[*]

APPEAL from an order of the Superior Court of Fresno County.  Rosemary T. McGuire, Judge.

John Wash, in pro. per., for Defendant and Appellant.

Law Office of Daniel L. Harralson and Daniel L. Harralson for Plaintiff and Respondent.

-ooOoo-

Defendant John Wash appeals from an order renewing a civil harassment restraining order against him and denying his motion to modify the terms of the

---

[*]      Before Franson, Acting P.J., Smith, J. and DeSantos, J.

restraining order. (Code Civ. Proc., §§ 527.6, subd. (j)(1), 533.)[1] The persons protected by the restraining order are plaintiff Maria Banda, the wife of John's deceased brother, and her two adult sons. John contends (1) the evidence is insufficient to support the implied finding that harassment was likely to recur in the future; (2) the stay-away orders were unconstitutionally overbroad; (3) filming or recording Maria cannot constitute harassment because she often photographs or records him; (4) Maria's sons should not have been included in the renewal order; (5) the trial court erred in failing to consider the legitimate purpose of his conduct that Maria argued constituted harassment; and (6) the trial court erred in excluding hearsay evidence. Also, John raises two questions of statutory construction relating to the duration of the renewed order. First, he contends the maximum renewal period was three years, not five years. Second, he contends the maximum length of the renewal period is calculated from the expiration date of the original restraining order, not the date of the hearing.

We reach the following conclusions. First, John has not established the existence of an error requiring outright reversal of the renewed restraining order. Second, the restraining order is unconstitutionally overbroad because it impacts John's constitutional rights more than reasonably necessary to protect Maria. This defect requires the trial court's orders to be vacated and the matter remanded for further proceedings. If the renewal request is granted on remand, the trial court must clarify and narrow the restraining order's terms to avoid unnecessarily impacting John's constitutionally protected interests, which relate to, among other things, his residence and place of self-employment. Third, during the hearing on remand, relevant evidence must not be excluded on the ground it is hearsay. Fourth, if a modified restraining order is renewed,

---

[1] All further statutory references are to the Code of Civil Procedure. All statutory references are to the version of the statute in effect in 2017, when Maria's request for a renewal of the civil harassment restraining order was filed, heard and granted.

2.

the maximum renewal period shall be no more than five years, with the starting date of the period calculated from the date the original restraining order expired, March 20, 2017.

We therefore reverse the order and remand for further proceedings.

## FACTS AND PROCEEDINGS

Appellant John Wash and respondent Maria Banda live in separate residences on approximately 100 acres of agricultural land located at 3535 and 3473 South Temperance Avenue, Fresno. Maria is the widow of John's deceased brother. The history of John and Maria is described in this court's other unpublished opinions, including *John Wash v. Maria Banda Wash*, case No. F075724 (F075724), which was filed on November 19, 2020. In F075724, the denial of John's request for civil harassment restraining order against Maria is affirmed. Much of the parties' history, which includes at least 11 lawsuits in Fresno County Superior Court and 12 appeals and eight writ proceedings in this court, need not be repeated here.

The 100-acre parcel is half a mile wide from its eastern boundary formed by South Temperance Avenue to its western boundary. The parcel's north-south dimension is 1,694 feet, which is 66 feet (i.e., one chain or four rods) less than one-third of a mile. The residences share a portion of a driveway connected to Temperance Avenue. John's residence is north of the shared portion of the driveway, about 250 feet west of Temperance Avenue. Maria's residence is reached by continuing west on the driveway, past the T intersection created by the driveway leading to John's residence. The configuration of the residences, a well and the driveways are shown on a plot plan approved by the County of Fresno, Public Works and Development Services Department on May 5, 1987. The plot plan shows John's residence is approximately 500 feet to the northeast of Maria's residence.

*Initial Restraining Order*

In December 2013, Maria filed a request for civil harassment restraining orders against John under section 527.6. The Fresno Superior Court assigned the matter case

3.

No. 13CECG03846.  Maria sought protection for herself, her two sons, other relatives, and employees of her business.  Maria asserted, among other things, that John cut the locks on the gates to her driveway multiple times, removed the gates, placed a storage container across the driveway, threatened her, and followed and filmed her as she went about her business.  She also alleged that on October 22, 2013, John removed a gate from its hinges without notice to her; when she shut the gate, it fell on her, causing serious injuries.

The day after Maria filed her request, the trial court issued a temporary restraining order and set a hearing date.  On March 20, 2014, after a two-day trial, the court issued a three-year restraining order using mandatory Judicial Council form CH-130.  The personal conduct orders prohibited John from harassing, intimidating, striking, threatening or contacting Maria and her sons and also stated:  "No filming, recording or otherwise intimidating any protected person herein."  The stay-away orders required John to stay at least 200 yards[2] away from the protected persons, and from Maria's home, workplace, vehicle, and "any pump[,] valve or other farming equipment located within the protected radius of" Maria.  The preprinted text in item 7.b. of the stay-away orders stated:  "This stay-away order does not prevent you from going to or from your home or place of employment."  The trial court also ordered John to pay Maria's attorney fees and costs, in the total sum of $16,814.  John appealed the restraining order and the award of attorney fees.

*Other Orders: Well and Pump*

About 15 months after the restraining order was issued and while John's appeal was pending, the trial court in case No. 15CECG00967 filed an "ORDER ON EX

---

**2**     A circle with a radius of 200 yards encompasses approximately 26 acres.  In comparison, a circle with a radius of 110 yards—the length of a standard city block— contains approximately 7.8 acres.  A standard city block is 2.5 acres.

PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND OSC RE: PRELIMINARY INJUNCTION." The June 15, 2015 order stated:

"Pending hearing on the Order to Show Cause, plaintiff, Maria S. Banda-Wash, is ordered to cease and desist denying or interfering with [John's] access to the well located on the 100 acre parcel of real property located at 3535 and 3473 S. Temperance Ave., Fresno, California for purposes of irrigating the citrus trees located on said real property. This order authorizes [John] to access said well only and not any other portion of the property within 100 yards of [Maria], except for the purpose of traveling directly to and from said well, and does not authorize any contact of any kind with [Maria]. Furthermore, this order authorizes [John] to access said well only for purposes of irrigation of his citrus crop and not for any other purpose. The court is mindful there is an existing court order which prohibits [John] from being within 100 yards [sic] of [Maria] and does not intend to authorize any change in that order except insofar as it is necessary for irrigation of [John's] citrus crop."

Maria presented testimony and photographs about events that occurred while the temporary restraining order relating to the pump and well was in place. One photograph, dated July 1, 2015, shows John and Guy Hutchins driving by the well on an ATV. Two photographs show Guy Hutchins near the pump. Another photograph, dated July 5, 2015, shows John and Guy Hutchins on the ATV. Maria testified they were using the driveway on the north side of her house and were within the 200-yard protected area.

On July 6, 2015, in case No. 15CECG00967, the trial court filed an "ORDER GRANTING APPLICATION FOR PRELIMINARY INJUNCTION AND PRELIMINARY INJUNCTION." The order referred to the temporary restraining order requiring Maria to stop interfering with John's access to the well to irrigate his citrus crop. It also stated "the well for the citrus trees is located on [Maria's] portion of the land, and there is a restraining order in effect … that prevents John from going within 200 yards of Maria" and described Maria's actions in blocking Guy Hutchins from

5.

operating the pump to irrigate John's citrus trees. The court concluded John had established the requisite probability of success on the merits and the respective hardships balanced in his favor. To avoid conflict with the existing restraining order, the court determined one of John's employees, rather than John, could come onto the property to operate the pump. Accordingly, the court's preliminary injunction allowed Guy Hutchins to access the well between 8:00 a.m. and 8:00 p.m. only for purposes of irrigating the citrus trees on the property and ordered Maria to cease and desist denying or interfering with access. The order also stated it "will be effective upon the posting of an undertaking by [John] of $10,000."

In February 2016, this court decided John's appeal from the order granting Maria's request for a restraining order and the award of attorney fees to her. We affirmed the order and the award. Our opinion stated the following about the pump, valves and diesel tank that were the source of much disagreement between the parties:

> "There was evidence the pump, valves, and a diesel tank were located in close proximity to [Maria's] residence. [John] does not point to anything in the record demonstrating that the citrus groves or anything necessary to the conduct of his business operations, other than the pump, valves, and tank were located within the 200-yard radius. The evidence indicated there were routes available to [John] to reach the citrus groves without using the driveway to [Maria's] residence and business. [¶] As to the pump, valves and diesel tank, the injunction only restrains [John] from personally approaching [Maria's] area of the property. It does not prevent his lawful use of the pump, valves or diesel tank. Evidence submitted with [John's] motion to dissolve the injunction suggests [Maria's] counsel has interpreted the order as limiting [John's] substantive rights. If it were interpreted to do so, the order would have the impermissible effect of restricting [John's] property rights in a proceeding in which those rights may not be determined. Thus, the pump and other equipment may be used in [John's] operation of the citrus groves, as long as [John] himself does not operate them. Nothing in the injunction prevents [John] from having a third person operate, maintain, and repair the equipment on his behalf in a lawful, peaceable manner."

6.

Maria's testimony in the present matter addressed the July 2015 order allowing access to the pump and the requirement that a $10,000 bond be posted to use the pump. Maria stated that to her knowledge the bond had not been posted.

Confrontations over use of the well and irrigation pump were a reason John filed a petition for workplace violence restraining order against Maria in May 2016. Maria's response stated she never hit or touched Guy Hutchins and asserted John "does not have the right to use any of the irrigation pumps on the property unless and until [he] files a $10,000 bond to secure costs and damages there[to]." In August 2016, the trial court held a hearing on John's petition, found John did not meet his burden of proof, and denied the petition.[3]

In the present matter, Maria testified that a photograph taken on June 20, 2016, with her GoPro camera shows Guy Hutchins walking away from the camera carrying the battery from the pump. Maria also testified Guy Hutchins and John's sister-in-law, Peggy Reimer, cut the fence around the pump on July 9, 2016, and presented two photographs (marked exhibits Nos. 21 and 22) to support the claim. [4]

*Renewal of Restraining Order*

The original restraining order against John was scheduled to expire on March 20, 2017. In February 2017, Maria filed a request to renew restraining order and a request

___

[3] In October 2018, we affirmed the trial court's order. (*John Wash v. Maria S. Banda-Wash* (Oct. 10, 2018, F074606) [nonpub. opn. affirming order denying John's petition under § 527.8 for restraining order to protect his employees].)

[4] The many disputes between the parties involving the well and pump cannot be resolved in this appeal. Thus, nothing in this opinion changes the existing orders pertaining to the well or John's proximity to it. We note that the original restraining order with its 200-yard stay-away order (which will be reinstated upon the vacatur of the renewed restraining order) prevents John from going near the well and, also, it appears a 100-yard stay-away order would prevent him from approaching the well. How the terms of any renewed restraining order are coordinated with the terms of other court orders addressing the well and pump are questions the parties may raise in the further proceedings conducted by the trial court after remand.

7.

for judicial notice of this court's opinion in case No. F069417. In May 2017, John filed a response to Maria's request to renew, stating he did not agree to extend the order. John also filed (1) objections to the declaration Maria attached to her request to renew, (2) a notice and motion to terminate or modify the civil harassment restraining order, and (3) a 13-page declaration in support of his motion.

The pending matters were heard in September 2017 and the trial court entered an order renewing the restraining order and denying John's motion to terminate or modify. Subsequently, that order was vacated, and Maria's request to renew and John's motion to terminate or modify were reheard on December 13, 2017.

At the December 13, 2017 hearing, John represented himself. Maria was present along with her attorney. The parties and the attorney were sworn and testified. Maria's evidence included about 25 photographs, some of which are described above. After hearing the evidence and reviewing the pleadings, exhibits and John's motion, the trial court announced it was prepared to make a ruling. The court stated renewals of restraining orders were authorized by statute and such renewals were discretionary. The court also stated it was authorized to rely solely on the record in the original case but it had received evidence about possible violations of the restraining order. The court said John "essentially conceded that he was within the 200 yards, but stated it was for legitimate purposes. [¶] The restraining order does not make any exceptions for legitimate purposes. The restraining order is very clear in its 200-yard prohibition and it doesn't allow for legitimate purposes." The court found "it is appropriate to renew" and "exercise[d] its discretion to renew the restraining order for a period of five years." The court also stated John's motion to modify or terminate the restraining order would be denied. Accordingly, the court signed order renewing civil harassment restraining order on Judicial Council form CH-730 and specified December 13, 2022, as its expiration date.

*Motion to Reconsider*

Later in December, John filed a motion to reconsider, asserting the court had failed to rule on his motion to modify or terminate the restraining order. On January 29, 2018, the superior court heard arguments on the motion. At the close of the hearing, the court asked the parties to have a seat and wait for the minute order. The minute order stated John's motion to reconsider was denied because there was no showing of new or different facts or circumstances. It also stated the court believed John's motion to modify or terminate the restraining order had been denied on the record at the December 13, 2017, hearing, a fact confirmed by the reporter's transcript now part of the appellate record.

In February 2018, John appealed from the December 13, 2017 order renewing the restraining order and the January 29, 2018 order denying his motion to reconsider.

**DISCUSSION**

I.      BASIC PRINCIPLES

A.      Renewal of Restraining Orders

A civil harassment restraining order issued under section 527.6 "may be renewed, upon the request of a party, for a duration of no more than five additional years, without a showing of any further harassment since the issuance of the original order." (§ 527.6, subd. (j)(1).) An original restraining order and a renewed order are "subject to termination or modification by further order of the court either on written stipulation filed with the court or on the motion of a party." (*Ibid.*) The request for renewal may be filed any time within three months before the restraining order expires. (*Ibid.*)

The provision stating a restraining order "may be renewed … without a showing of any further harassment since the issuance of the original order" (§ 527.6, subd. (j)(1)) does not mean renewal is automatic. (*Cooper v. Bettinger* (2015) 242 Cal.App.4th 77, 89 (*Cooper*).) Instead, the trial court has the discretion to renew the restraining order and to

9.

determine its duration. (*Ibid.*) In *Cooper*, the court addressed "the proper standard for the trial court to apply in exercising its discretion." (*Id.* at p. 90.) The court concluded "a restraining order should be renewed only when the trial court finds a reasonable probability that the defendant's wrongful acts would be repeated in the future." (*Ibid.*) Stated another way, "[a]n injunction restraining future conduct is only authorized when it appears that harassment is likely to recur in the future." (*Harris v. Stampolis* (2016) 248 Cal.App.4th 484, 496 (*Harris*).)

A reasonable probability can be established without the protected party proving additional harassment after the issuance of the original restraining order. (*Cooper*, *supra*, 242 Cal.App.4th at p. 90.) If proof of continuing harassment were required, the protected party would have to demonstrate the initial order proved ineffectual in halting the restrained party's harassing conduct simply to obtain an extension of that ineffectual order. (*Ibid.*) Stated from different perspective, the fact the order was effective and no further harassment occurred does not bar its renewal. (*Ibid.*)

B.     Standard of Review

The renewal of a restraining order under section 527.6 is committed to the trial court's discretion. (*Cooper*, *supra*, 242 Cal.App.4th at p. 90.) Therefore, the renewal of a restraining order, like the issuance of the original order, is reviewed on appeal under the abuse of discretion standard. (See *Parisi v. Mazzaferro* (2016) 5 Cal.App.5th 1219, 1226 (*Parisi*) [issuance of protective order reviewed for abuse of discretion].) We also conclude that a decision on a motion to terminate or modify a restraining order is committed to the trial court's discretion and also is reviewed under the abuse of discretion standard. "The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711 (*Haraguchi*).)

When a trial court's express or implied findings of fact are challenged on appeal, the findings are upheld if they are supported by substantial evidence. (*Haraguchi*, *supra*, 43 Cal.4th at p. 711.) Under the substantial evidence standard, "[i]t is not our task to weigh conflicts and disputes in the evidence; that is the province of the trier of fact. Our authority begins and ends with a determination as to whether, on the entire record, there is *any* substantial evidence, contradicted or uncontradicted, in support of the judgment." (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 630–631.) Also, under the doctrine of implied findings, an appellate court must presume that, where the record is silent, the superior court considered all of the relevant factors and made all of the factual findings necessary to support its decision for which there is substantial evidence. (*Brewer v. Carter* (2013) 218 Cal.App.4th 1312, 1320.)

When an appellant challenges the superior court's determination of a legal question, the reviewing court conducts an independent review, without deference to the trial court's conclusion. (*Haraguchi*, *supra*, 43 Cal.4th at p. 712 [conclusions of law are reviewed de novo]; see *Eneaji v. Ubboe* (2014) 229 Cal.App.4th 1457, 1463 ["whether a trial court applied the correct legal standard to an issue in exercising its discretion is a question of law"].) " 'All exercises of discretion must be guided by applicable legal principles ... which are derived from the statute under which discretion is conferred. [Citations.] If the court's decision is influenced by an erroneous understanding of applicable law or reflects an unawareness of the full scope of its discretion, the court has not properly exercised its discretion under the law. [Citation.] Therefore, a discretionary order based on an application of improper criteria or incorrect legal assumption is not an exercise of informed discretion and is subject to reversal.' " (*Cooper*, *supra*, 242 Cal.App.4th at p. 90.)

C.      Overview of Opinion

Ordinarily, an appellate opinion would address the issues that might lead to an outright reversal of the trial court's order before considering the issues raising errors that would be remedied by a remand for further proceedings in the trial court.  Here, we begin with the constitutional issue of overbreadth, which John acknowledges would not eliminate the restraining order but would be remedied by remanding to modify the restraining order (i.e., clarifying and narrowing its terms) to comply with constitutional standards.  As described below, we conclude the restraining order is overbroad and a remand is necessary to redraft its terms.

The next set of issues addressed are those that would lead to an outright reversal. Our discussion below explains why an outright reversal with directions to vacate the renewed restraining order is not appropriate under the circumstances.

The third set of issues addressed are the remaining claims of error that, if established and if prejudicial, would have been remedied by a remand for further proceedings.  On one issue, John has demonstrated an abuse of discretion that requires the orders granting Maria's renewal request and denying John's motion to be vacated and the trial court directed to reevaluate the request and motion.  The other issues are discussed to avoid error in the subsequent proceedings conducted on remand.

II.     CONSTITUTIONALITY OF THE RESTRAINING ORDER

A.      Basic Legal Principles

Under state and federal law, a restraining order may be unconstitutional because it is vague, overbroad or a combination of the two.  (E.g. *Smith v. Silvey* (1983) 149 Cal.App.3d 400, 406–407 [order prohibiting defendant from " 'contacting' " mobile home park residents was unconstitutionally overbroad and vague]; see *Pittsburgh Press Co. v. Human Rel. Comm'n* (1973) 413 U.S. 376, 390 [upholding an order that is "clear and sweeps no more broadly than necessary"].)  Whether a restraining order infringes upon the constitutional rights of the restrained party because it is overbroad, vague, or

12.

both presents questions of law subject to de novo review. (*Harris*, *supra*, 248 Cal.App.4th at p. 497.)

Generally, a restraining order is unconstitutionally vague when the order does not clearly define the conduct prohibited. (*Parisi, supra,* 5 Cal.App.5th at p. 1231; *Evans v. Evans* (2008) 162 Cal.App.4th 1157, 1167.) The test for vagueness is whether the restraining order is sufficiently precise to provide a person of ordinary intelligence fair notice that his or her contemplated conduct is forbidden. (*Parisi*, *supra*, at p. 1231 [restraining order affecting First Amendment right to free speech was impermissibly vague; remanded for modification].)

A restraining order is unconstitutionally overbroad if it impacts the restrained person's constitutional rights more than reasonably necessary to protect the aggrieved party. (See *People ex rel. Reisig v. Acuna* (2017) 9 Cal.App.5th 1, 22 [injunction may not burden constitutional rights more than necessary to serve the significant governmental interest at stake].) For example, when an injunction restricts the right to free speech, courts seek "to ensure that the injunction was no broader than necessary to achieve its desired goals." (*Madsen v. Women's Health Center, Inc.* (1994) 512 U.S. 753, 765.) Under the foregoing principles, our analysis (1) identifies John's constitutionally protected interests, (2) evaluates how the restraining order impacted those interests, (3) identifies the protection needed by Maria, the aggrieved party, and (4) determines whether restrictions imposed are more than reasonably necessary to protect Maria.

B.     Stay-Away Orders

        *1.     Contentions*

John contends the terms of the stay-away orders are unconstitutionally overbroad and argues the evidence presented at the renewal hearing established this overbreadth. He further contends the appropriate remedy for this defect is to reverse the order and

remand to the trial court to address whether the stay-away orders can be modified to avoid the constitutional violations. John relies on article I of the California Constitution, section 1 and section 7, subdivision (a). The first provision states in full: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." (Cal. Const., art. I, § 1.) The latter provision states in part: "A person may not be deprived of life, liberty, or property without due process of law or denied equal protection of the laws." (Cal. Const., art. I, § 7, subd. (a).) John also refers to case law stating that whether a restraining order passes constitutional muster is a question of law subject to de novo review. (*Harris*, *supra*, 248 Cal.App.4th at p. 497.)

Maria acknowledges that John is "raising a state constitutional issue regarding the request to renew, however the issue raised is beyond the scope of this appellate review, see *Cooper*[, *supra*,] 242 Cal.App.4th 77, 90–91." That part of *Cooper* discusses the statutory text stating a restraining "order may be renewed 'without a showing of any further harassment since the issuance of the original order.' " (*Id*. at pp. 90–91, quoting § 527.6, subd. (j)(1).)

### 2. *Appellate Review of Constitutional Issues*

We begin by considering Maria's argument that the constitutional issues are beyond the scope of this appellate review. In the trial court proceeding, John's constitutional issue was raised in two procedural contexts. First, as to the renewal of the order, he argued that any purported violations of the terms of the restraining order arose because it was overbroad as applied and, therefore, renewal was unwarranted. Second, on the separate question of modification raised by his motion, John argued the terms of the order must be altered because the evidence demonstrated those terms are infringing his constitutional rights.

14.

In this appeal, we consider the second procedural context, which involves the issues of whether John could properly raise the constitutional claim in his motion to modify and, in turn, whether John may raise the constitutional issue on appeal.  Two statutory provisions are relevant to whether John's constitutional claim was properly raised in his motion to modify the restraining order.  First, the modification process is described in section 527.6, subdivision (j)(1), which states the restraining order may be renewed "subject to termination or modification by further order of the court either on written stipulation filed with the court or on the motion of a party."  Second and more generally, section 533 states that "the court may on notice modify or dissolve an injunction … upon a showing that there has been a material change in the facts upon which the injunction … was granted, … or that the ends of justice would be served by the modification … of the injunction .…"

The text in section 527.6, subdivision (j)(1) does not limit the issues that may be raised in a motion for modification.  Thus, we will not interpret it as impliedly prohibiting modifications based on as applied constitutional challenges.  (See § 1858 [judge should not insert what has been omitted when construing a statute].)  The words "the ends of justice" in section 533's phrase "that the ends of justice would be served by the modification" are general in nature.  We interpret it to authorize the modification of terms of the restraining order when a restrained party presents evidence showing the restraining order, as applied to the facts, is unconstitutionally overbroad.  (Cf. *U.S. ex rel. Schnitzler v. Follette* (2nd Cir. 1969) 406 F.2d 319, 321 [United States Supreme Court's use of the words "the ends of justice" was meant to include situations where the relevant facts had not been adequately developed in the petitioner's first habeas corpus application].)  The contrary interpretation—that as applied constitutional violations are never grounds for obtaining a modification and justice is best served by letting the violations stand—approaches the absurd.  (See *National Shooting Sports Foundation, Inc. v. State* (2018) 5 Cal.5th 428, 433 [absurdity canon of statutory construction avoids

interpretations that produce absurd consequences].)  Based on our interpretation of sections 527.6 and 533 and the presentation of evidence about events occurring after the issuance of the original restraining order in March 2014, we conclude the constitutional issues were properly raised in the trial court by John's motion to modify.

We recognize the Second District stated that "where a protected party seeks a renewal of a restraining order and the restrained party … has lost on appeal, the restrained party cannot challenge the findings and evidence underlying the original order nor the validity of that order." (*Cooper*, *supra*, 242 Cal.App.4th at p. 92.)  We do not interpret the phrase "the validity of that order" as precluding a restrained party from seeking modification of the terms of a renewed restraining order, a procedure specifically authorized by statute.  Furthermore, the court in *Cooper* did not consider a constitutional challenge to the terms of the renewed restraining order.  As a result, *Cooper* does not establish the principle that once an original restraining order is affirmed on appeal, the order and any renewals may never be modified (1) to avoid unnecessarily impairing the restrained party's constitutional rights or (2) to limit its scope to prohibiting conduct that satisfies the statutory definition of harassment.

As to the scope of appellate review, John filed a timely appeal.  (See Cal. Rules of Court, rule 8.104(a) [time to appeal].)  Furthermore, the order renewing the restraining order and denying his motion to modify is appealable.  (§ 904.1, subd. (a)(6) [injunction orders are appealable].)  Therefore, the constitutional issues he raised below are properly before this court.  In short, John's loss of his appeal from the initial restraining order does not forever bar subsequent requests to modify the terms of the renewed restraining order on the ground that the order's restrictions are unconstitutional as applied or extend to activity that does not meet the statutory definition of harassment.

### 3. *John's Constitutionally Protected Interests*

The initial step in reviewing the merits of John's constitutional claim is to determine whether John has any constitutionally protected interests that the stay-away orders might impair. First, John's ownership interest in the 100 acres and his residence is a property interest and his enjoyment and use of that property interest is protected by California's due process clause, which states "[a] person may not be deprived of … property without due process of law." (Cal. Const., art. I, § 7, subd. (a).)

Second, John's interest in pursuing his business is a constitutionally protected interest. "The right to engage in a legitimate employment or business receives recognition as a portion of the individual freedoms secured by the due process provision of the federal and state Constitutions." (*Doyle v. Board of Barber Examiners* (1963) 219 Cal.App.2d 504, 509, citing *Schware v. Board of Bar Examiners* (1957) 353 U.S. 232, 238–239.) Thus, John's agricultural operations on the 100 acres implicate both a protected property interest in the use and enjoyment of the real estate and a protected interest in the pursuit of a legitimate business.

Third, John's interest in freedom of movement is a constitutionally protected liberty interest. This court has recognized "[f]reedom of movement is basic in our scheme of values" as it is often closely connected to other fundamental constitutional rights. (*In re White* (1979) 97 Cal.App.3d 141, 149.) In that decision, we also stated: "Like all constitutional rights the right of free movement is not absolute and may be reasonably restricted in the public interest." (*Ibid.*)[5]

---

[5] We reiterate this point here. John's constitutionally protected property and liberty interests are not absolute, and John does not contend they are. His appellate briefing recognized that section 527.6 was enacted to protect the constitutional right of harassment victims to pursue safety, happiness and privacy as guaranteed by the California Constitution. (See *Brekke v. Wills* (2005) 125 Cal.App.4th 1400, 1412.) Thus, the rights associated with John's constitutionally protected interests may be subject to reasonable restrictions in the public interest, such as the public interest in preventing civil harassment and thereby protecting the constitutional rights of another.

To summarize, we conclude John has multiple constitutionally protected interests potentially affected by the stay-away orders. Those interests provide the foundation for his challenge asserting those orders are unconstitutionally vague and overbroad.

### 4. *Terms of the Stay-Away Orders*

The trial court's order renewing civil harassment restraining order on Judicial Council form CH-730 included as an attachment a copy of the March 20, 2014 restraining order and did not modify any terms of the original order. The stay-away orders in item 7 of the restraining order state that John "**must** stay at least 200 yards away from" Maria and her two sons, Maria's home, the "job or workplace of" Maria, and the vehicle of Maria. In addition, the order states: "This will include any pump[,] valve or other farming equipment located within the protected radius of" Maria. The preprinted language in item 7.b. of the stay-away orders sets forth the following exception: "This stay-away order does not prevent you from going to and from your home or place of employment."

Our February 2016 unpublished opinion affirming the issuance of the initial restraining order addressed John's argument about the 200-yard stay-away distance affecting his business. We stated John did "not point to anything in the record demonstrating that the citrus groves or anything necessary to the conduct of his business operations, other than the pump, valves, and tank were located within the 200-yard radius. The evidence indicated there were routes available to [John] to reach the citrus groves without using the driveway to [Maria's] residence and business." Later in the opinion, we reiterated this point about other routes to his place of employment, stating: "Evidence presented at trial indicated there were multiple routes by which [John] could reach his home or the citrus groves without travelling on the gated driveway that ran by [Maria's] home and business." As to the stay-away distance, we again referred to the absence of evidence, stating John "points to no evidence in the record that the 200-yard

18.

distance in the stay away order prevents him from going to and from his house or to and from the citrus groves." Our statements about John's ability to access his home and the citrus orchards imply that, on the record available in that appeal, John had not shown the restrictions precluded his being in his house or being at his place of self-employment.

### 5. *Distance Between Residences*

John's opening brief argues that new evidence in the form of a county map shows the two parties' residences and work areas are not even 200 yards apart and, at a minimum, this requires a modification of the 200-yard stay-away distance. The map referred to is the plot plan approved by the County of Fresno, Public Works and Development Services Department on May 5, 1987, which has a line drawn between the two homes and lists the distance as plus or minus 500 feet.

At the hearing, Maria presented no evidence directly addressing the distance between the houses. Similarly, on appeal, Maria's brief makes no mention of the 200-yard distance of the stay-away order and, thus, makes no attempt to demonstrate the necessity of that distance. Instead, Maria's only argument responding to John's constitutional claim is that the issue "is beyond the scope of this appellate review."

Faced with the absence of evidence or argument from Maria about the appropriate stay-away distance, we look to the positions Maria took earlier in the litigation on the question of the appropriate distance. Maria's initial position was stated in her December 16, 2013, request for civil harassment restraining order on Judicial Council form CH-100, which requested stay-away orders with a 1,000-yard distance. A circle with a radius of 1,000 yards from Maria's home would have prevented John from setting foot on the 100 acres. Such a circle would cover approximately 649 acres—more than six times the size of the parcel containing the parties' residences. The judge who decided whether to issue a temporary restraining order appeared to recognize the consequences of a stay-away distance of 1,000 yards. Consequently, a stay-away distance of 100 yards was adopted in

the December 17, 2013 temporary restraining order on Judicial Council form CH-110. This distance created protective circles of 6.49 acres around Maria and her house.

Maria's subsequent position as to the stay-away distance is reflected in the statements of her attorney during his closing argument at the March 2014 hearing on the initial restraining order. At that time, the temporary restraining order with its 100-yard distance had been in place for three months. Maria's attorney stated that "100 yards would be fine" and he also stated, "if [John] stays a hundred yards away from Maria or her home, I think that will effectively take care of that." Notwithstanding the distance stated in the temporary restraining order, its apparent effectiveness for three months, and the statements of Maria's attorney, the trial court adopted a 200-yard distance in its stay-away orders.

With this background about Maria's requests and arguments relating to an appropriate stay-away distance, we examine whether the 200-yard stay-away distance impacts John's constitutional rights to the use and enjoyment of his residence. A literal application of the 200-yard distance and the exception stating the order "does not prevent [John] from going to or from [his] home" to the uncontradicted evidence in the appellate record shows that distance would preclude John from occupying his residence. The record shows the two homes are located less than 200 yards from one another. Therefore, the stay-away order measured from Maria's home precludes John from being in his residence. Accordingly, the renewed restraining order impacts John's constitutionally protected interest in the use of his residence.

Next, we consider whether the 200-yard distance is "broader than necessary to achieve its desired goal[]" of protecting Maria from harassment. (*Madsen v. Women's Health Center, Inc.*, *supra*, 512 U.S. at p. 765; see *People ex rel. Reisig v. Acuna*, *supra*, 9 Cal.App.5th at p. 22 [injunction may not burden constitutional right more than necessary to serve the significant governmental interest at stake].) This leads to the relatively simple question of whether it is necessary for Maria's protection to have a stay-

20.

way distance that prevents John from occupying his residence. Based on the record before us and the absence of any argument to the contrary, we conclude it is not necessary. (See *Harris*, *supra*, 248 Cal.App.4th at p. 497 [whether a restraining order passes constitutional muster is a question of law subject to de novo review].)

In reaching this conclusion as to necessity, we note that Maria has yet to interpret the restraining order as preventing John from occupying his residence. This suggests she may read the order as containing an implied exception to the distance requirement, perhaps doing so based on the language in the exception set forth in item 7.b. of the restraining order. We further note that, despite John's continued occupancy of his residence, nothing in the record suggests there is a danger of John harassing Maria while he is inside his residence. As a result, we conclude it is not necessary for the restraining order to be drafted using a stay-away distance that, when applied literally, prevents John from occupying his residence. It follows that the 200-yard stay-away distance is an overbroad infringement of John's constitutionally protected interests in the use of his residence. Accordingly, it must be modified on remand.

The argument, if it had been made, that an implied exception allows John to be in his residence is not a convincing reason for denying modification. The state and federal constitutions require a restraining order to clearly define the conduct prohibited. (*Parisi*, *supra*, 5 Cal.App.5th at p. 1231.) Appellate courts enforce this clarity requirement because it aids law enforcement personnel who are called upon to apply the terms of the restraining order. It also prevents conflicts from arising when a party shifts his or her interpretation of what is or is not implied by the order.

### 6. *Distance as Applied to John's Workplace*

John also contends the renewed restraining order puts an overbroad restraint on him working as an agricultural farmer on his own property. He asserts our February 2016 opinion interpreted the restraining order in a manner that did not prevent him from going

to and from his workplace in the citrus orchards. In that opinion, we stated the evidence showed "there were routes available to [John] to reach the citrus groves without using the driveway to [Maria's] residence and business." John contends that the stay-away order based on the location of Maria's person, rather than her home, is being used by Maria to claim he is violating the restraining order while he and his workers are in the citrus orchards. John states Maria watches him and his workers on her cameras and then approaches near enough to them by driving on the dirt roads in the orchard areas and yelling at John that he is violating the restraining order. John also contends Maria has repeatedly approached him in areas outside the protected area surrounding her home and has videotaped and surveilled him as he travels to and from his home and his workplace in the orchards.

Our overbreadth analysis considers whether the restraining order requiring John to stay 200 yards or more from Maria impacts John's constitutional protected interests in the use and enjoyment of his rights in the agricultural land and his right to pursue his self-employment as a citrus grower. As drafted, the restraining order places no limits on Maria's access to any part of the co-owned 100 acres and we are aware of no such limitations being applied to Maria. Therefore, Maria may approach John in the citrus orchards where he is working and force John to retreat or face the alternative of being in violation of the stay-away order. This dilemma is the basis for our conclusion that the order requiring John to stay more than 200 yards from Maria impacts John's constitutionally protected interests when it is applied to certain circumstances. Specifically, under the literal terms of the restraining order, Maria may approach John while he is in the citrus orchards (i.e., his place of work) and John is required to move away, which affects his ability to work in the orchards.

Having determined there is an impact on constitutionally protected interests, we next consider whether the order requiring John to stay more than 200 yards from Maria is "broader than necessary to achieve its desired goal[]" of protecting Maria from

22.

harassment.  (*Madsen v. Women's Health Center, Inc.*, *supra*, 512 U.S. at p. 765; see *People ex rel. Reisig v. Acuna*, *supra*, 9 Cal.App.5th at p. 22 [injunction may not burden constitutional right more than necessary to serve the significant governmental interest at stake].)  This question can be rephrased as follows:  To protect Maria from harassment by John, it is reasonably necessary to require John to stay 200 yards away from Maria when they are both in the orchards on the 100 acres?  The answer to this question about reasonable necessity involves balancing Maria's right under the California Constitution to pursue safety, happiness and privacy (*Brekke v. Wills*, *supra*, 125 Cal.App.4th at p. 1412) against John's constitutionally protected interests.  In the course of handling the many matters the parties have presented to this court, it has been this court's understanding that John is managing the citrus operations on the 100-acres and Maria is managing the nursery business located near her residence.[6]  Based on this understanding, John's work in the orchards would take precedent over Maria's driving on the roads through the orchards, just as Maria's interest in the nursery has been given precedence by the distance John is required to maintain from Maria's home.  Furthermore, Maria is in control of the situations where she approaches John in the orchards—that is, in the context of the orchards, she chooses when she is within 200 yards of John.  In light of this choice, one cannot conclude her right of privacy is affected.  Instead, the main impediment from John being in the orchard is his impact on her freedom of movement.  There has been no

---

**6**      During the March 20, 2014 closing argument for the original restraining order, the court asked Maria's counsel if a stay-away distance from Maria's residence or place of business (i.e., the nursery) would be one in the same.  Counsel answered, "Well, [Maria's] residence is in the middle of the business.  I think 1,000 yards from the edge of the business might impose on his home—I'm being reasonable here—and impose on him doing the tractor work in the fields, if he chooses to do that.  But if he stays a hundred yards away from Maria or her home, I think that will effectively take care of that."  Later counsel referred to moving a tank from the nursery property, stating:  "We will put up another tank, *since John is farming the citrus* and that pump is used primarily, if not exclusively, for irrigating the citrus."  (Italics added.)

showing that Maria's business requires her presence in the orchards. Balancing the constitutional protections afforded Maria's freedom of movement against John's right to pursue employment and business, we conclude the application of the literal terms of the order requiring him to stay 200 yards away from Maria when he is working in the orchards is overbroad.

### 7. *Appellate Relief*

At a minimum, the constitutional violations require that this matter be remanded to the trial court for modification of the overbroad restrictions.[7] (See *Evans v. Evans*, *supra*, 162 Cal.App.4th at pp. 1169, 1172 [portions of restraining order unconstitutionally vague and overbroad; remanded to trial court].) The scope of the proceedings on remand is addressed after John's claims of error that, if affirmatively demonstrated, would require the outright reversal of all or part of the renewed restraining order. (See *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [generally, appellants have the burden of affirmatively establishing prejudicial error].)

## III. GROUNDS FOR OUTRIGHT REVERSAL

### A. Sufficiency of the Evidence: Future Harassment

#### 1. *Contentions*

John refers to the principle that "[a]n injunction restraining future conduct is only authorized when it appears that harassment is likely to recur in the future." (*Harris*, *supra*, 248 Cal.App.4th at p. 496.) He acknowledges that in the absence of an express finding an appellate court presumes the trial court followed applicable law and impliedly

---

[7] For example, a less broad restraining order that would serve the purpose of protecting Maria without unnecessarily impacting John's constitutionally protected interests in being physically present in the citrus orchards could define the citrus orchards or the part in which John works as a no-retreat zone for John, meaning that if Maria choose to be in that area, John would not be required to retreat—that is, would not have the responsibility of maintaining the distance from Maria specified in the general provisions of the stay-away order.

24.

found future harassment was likely to occur. John contends the trial court erred in making the implied finding because it is not supported by substantial evidence that he was likely to commit such acts.

Maria contends that under section 527.6 and existing case law, she was not required to present evidence of further harassment occurring after the restraining order was issued. Maria argues that, in renewing a restraining order, the trial court may rely solely on the record in the original case. Furthermore, Maria contends the trial court considered the evidence presented by the parties and correctly exercised its discretion in renewing the order.

### 2. *Sufficiency of the Evidence*

Based on the parties' contentions, we consider whether substantial evidence supported the trial court's implied finding of fact that harassment is likely to recur in the future. A finding of fact about the probability of an event occurring in the future is necessarily an estimate or forecast. Assessing this probability requires the trial court to draw inferences from the evidence presented. Stated otherwise, it is not possible to present direct evidence of how human beings will behave in the future and, therefore, the probability must be assessed by considering circumstantial evidence, including past behavior, statements by the parties about their future intent (if any), and the current circumstances of the parties' relationship. In making this evaluation, a trial court can " 'consider any evidence showing a likelihood of future harassment, including evidence of conduct that might not itself constitute harassment.' " (*Harris*, *supra*, 248 Cal.App.4th at p. 501.) Thus, behavior that, by itself, does not constitute unlawful harassment might show an intention to resume or continue unlawful harassment. (*Ibid*.)

In this case, the issuance of the initial restraining order and the affirmance of that order on appeal established that John harassed Maria. (See *Cooper*, *supra*, 242 Cal.App.4th at p. 92.) In addition, the evidence taken at the December 13, 2017 hearing

25.

demonstrated that their relationship remained nearly as contentious as it was when the initial restraining order was issued in 2014.  Their contentious relationship is primarily caused by their disagreements relating to the ownership and use of the land on which they reside.  Because the source of their disagreements that lead to confrontations prior to March 2014 still existed in December 2017 and their relationship remained contentious after issuance of the initial restraining order, it was reasonable for the trial court to infer that harassment was *likely* to recur in the future, either directly by John or indirectly through others acting in concert with John.  We therefore reject John's contention that the insufficiency of the evidence provides a ground for reversing the renewal of the restraining order and directing the trial court to enter an order denying Maria's request.

We note John specifically argues that "Maria's allegation of pending litigation with a restrained person is not authorized under the definition of harassment set out in CCP 527.6 (b) to support a finding of 'future harassment'."  We agree that pursuing or defending litigation is not included in the statutory definition of harassment.  (See *Harris*, *supra*, 248 Cal.App.4th at p. 502, fn. 5 [constitutionally protected conduct could not be considered as part of course of conduct, noting defendant's "filing of a harassment complaint ... and his complaint of false imprisonment to the police were not considered in [the trial court's] determination that harassment occurred."].)  However, as described above, the existence of litigation between the parties and, more importantly, the underlying causes of the litigation constitute circumstantial evidence relevant to evaluating the parties' current situation and the likelihood of future harassment.  (See generally, Evid. Code, § 210 [definition of relevant evidence].)  Therefore, the trial court did not commit error when it considered the parties' pending litigation.

B.	Restricting on Filming and Recording

	1.	*Personal Conduct Order*

A personal conduct order in the original restraining order stated: "No filming, recording or otherwise intimidating any protected person herein." The inclusion of "otherwise intimidating" is redundant to the first of the personal conduct orders, which states John must not "[h]arass, *intimidate*, molest, attack, strike …" any protected person. (Italics added.) Accordingly, John has limited his arguments against this specific personal conduct order to its terms restricting filming and recording.

John contends Maria has no ground or right to ask for the renewal of the filming and recording restrictions against him because "she has endlessly and repeatedly taken John's photo, with her cell phone, GoPro body camera, and stationary cameras on the property and around John." Using the ideas of reciprocity and parity,[8] John argues that, considering Maria's behavior, no reasonable person would believe that taking photographs of her constitutes harassment from which John should be restrained. Restating this argument, John contends Maria's conduct of continuously filming him and his workers proves that she is not harassed if she is filmed. Based on these arguments, John contends the restraint on filming and recording should be vacated.

John supports his argument by referring to the "mountain of exhibits" Maria presented in attempting to prove he had violated the restraining order. John argues those pictures are clear and convincing evidence that Maria "has repeatedly approached [him] in areas outside the restrained area and videotaped and surveilled him while he travels to and from his home and workplace out in the orchards." In making this argument, John

---

[8]	Reciprocity has been used by teachers since ancient times, including Confucius, the sage Hillel, Greek and Roman writers, and Jesus of Nazareth, to describe how a person should treat others. (Bernstein, *Reciprocity, Utility, and the Law of Aggression* (2001) 54 Vand. L.Rev. 1, 18 ["Reciprocity as a Behavioral Ideal and Legal Principle"].) John's argument also invokes the idea of parity, which is contained in the adage: " 'What's good for the goose is good for the gander.' " (*In re Marriage of Paul* (1985) 173 Cal.App.3d 913, 920.)

appears to use the term "restrained area" to refer to the areas defined by the stay-away distance from Maria's home.

### 2. Context

John's assertion that Maria takes many pictures of him is not disputed. The evidence presented at the hearing included many photographs taken by Maria and her testimony about those photographs. For instance, Maria testified that when she goes out of the house without her son or her dog, "I carry a GoPro just as protection. When I see Mr. Wash or anybody that he send to my house, I try to turn it on. That way, I get evidence of what is happening." In addition, in F075724, Maria's attorney confirmed that Maria had placed wildlife cameras on the property at his advice. Also in F075724, Maria's son, Martin, filed a declaration describing photographs that he had taken of John. Their purpose for taking these photographs of John was to use as proof that John was feigning the extent of an injury allegedly caused by Maria. The foregoing establishes the fact that Maria's conduct has included taking many pictures and recordings of John. Therefore, our consideration of the impact of the restriction on John's recording images[9] of Maria takes that fact into account.

Our evaluation of John's challenge to the restriction on his recording images also considers the procedural posture of this appeal and the parties' other litigation. Part of this context is established by our determination that the stay-away order is unconstitutional because of its overbreadth and, therefore, the renewal order and the denial of John's motion must be remanded for further proceedings. Another part of the procedural context is established by our decision in F075724, which affirmed the denial of John's request for a restraining order against Maria—a request that asserted Maria's recording images of him and family members constituted harassment.

---

**9** The phrase "recording images" is used in its broadest sense—that is, it includes images captured digitally, on film, on videotape, or otherwise, and includes a single image (snapshot) or multiple sequential images (movie).

### 3. *Recording Images as a Form of Harassment*

First, we consider John's argument that his recording images of Maria cannot harass her because she has recorded his image many times. In F075724, John sought a restraining order prohibiting her from recording his image. The trial court denied that request, stating Maria could take pictures of John "as a right o[r] privilege." John's argument implies that he has the same rights and privileges and, therefore, ought to be allowed to record Maria's image.

As background for evaluation of the narrower versions of John's argument, we first consider its broadest form—namely that recording images of others cannot constitute "harassment" under the statute. Harassment—as defined by section 527.6, subdivision (b)(3)—includes "a knowing and willful course of conduct directed at a specific person that seriously … annoys … the person and that serves no legitimate purpose." Whether this definition is satisfied and "unlawful harassment exists" is a question of fact resolved by the trial court, which makes findings after receiving "any testimony that is relevant." (§ 527.6, subd. (i).) This inquiry necessarily must be conducted on a case-by-case basis. As a result, the broadest form of the argument goes too far when it asserts recording images is not conduct that could seriously annoy the person. Also, the broadest form cannot be reconciled with the holding in *Bookout v. Nielsen* (2007) 155 Cal.App.4th 1131. In that case, the court listed the defendant's use of cameras as part of the evidence of behavior supporting the finding of harassment under the Elder Abuse Act (Welf. and Inst. Code, § 15600 et seq.). (*Bookout v. Nielsen*, *supra*, at p. 1141.) Thus, depending on the circumstances of the particular case, recording images of another person may be harassment—that is, it might constitute a course of conduct that seriously annoys the person being recorded. (§ 527.6, subd. (b)(3).) Accordingly, we will not adopt a general principle holding that a person who frequently records images of another cannot be harassed by being photographed or filmed.

A narrower version of John's argument is that, under the peculiar facts of this case, Maria's conduct establishes *as a matter of law* that John's recording images of Maria does not seriously annoy her. Although the ideas of reciprocity and parity provide a common sense foundation for John's argument, he has cited, and we have located, no authority holding that person A's recording images of person B establishes as a matter of law that no harassment occurs when the roles are reversed. The absence of any such precedent is understandable because the determination of whether recording images of another person constitutes unlawful harassment depends on the circumstances of each case. In this particular case, the evidence is insufficient to establish *as a matter of law* that John's recording images of Maria would not seriously annoy her.

Based on the foregoing conclusions, we cannot reverse and vacate the personal conduct order prohibiting filming or recording of Maria. This does not end our inquiry of the restriction on John's recording images because the restriction must be reevaluated on remand to taking into consideration John's constitutionally protected interests in his home and business, the legitimate purposes that might be served by recording images in certain specific situations or areas, and other factors. (See pt. IV.B., *post*.)

C.     Inclusion of Maria's Sons

John appears to claim that the inclusion of Maria's two sons as other persons protected by the renewed restraining order rendered the order overbroad. Alternatively, John may be arguing that there is insufficient evidence to support a finding that it is likely he would harass the sons in the future. John asserts he "has had no contact with … Maria's two adult sons, and neither asked for a renewal of the restraining order."

The no-contact-with and neither-asked points raised by John do not demonstrate it was error to include the sons as persons protected by the renewed restraining order. John has cited, and we have located, no authority stating the renewal of a restraining order as to the "Additional Protected Persons" identified under item 3 of the order on Judicial

30.

Council form CH-130 requires those individuals (1) to formally join the renewal request or (2) to file their own requests for renewal. Thus, the fact that neither son asked for a renewal does not establish a legal bar to including them as additional protected persons in the renewed restraining order.

As to the sufficiency of the evidence, contact with an additional protected person during the term of the original restraining order is not a prerequisite to maintaining the protection of that person in the renewed order. Instead, other types of evidence may establish an adequate basis for the trial court's inference that harassment of the sons, "is likely to recur in the future." (*Harris*, *supra*, 248 Cal.App.4th at p. 496.) Consistent with our earlier discussion about the evidence needed to support a finding as to future harassment, we conclude the evidence relating to the continued antagonism between Maria and John provides an adequate basis for inferring the requisite probability of future harassment of the sons. (See pt. III.A.2., *ante* [Sufficiency of the Evidence].)

IV.     OTHER ISSUES AFFECTING THE PROCEEDINGS ON REMAND

A.      Informed Discretion and Scope of Further Proceedings

1.      *John's Contentions*

During the course of ruling from the bench, the trial court stated John "essentially conceded that he was within the 200 yards, but stated that it was for legitimate purposes. [¶] The restraining order does not make any exceptions for legitimate purposes. The restraining order is very clear in its 200-yard prohibition and it doesn't allow for legitimate purposes."

John contends the trial court erred in failing to consider whether the acts alleged were for a legitimate purpose. John contends the statutory definition of "harassment" covers only conduct "that serves no legitimate purpose" and, in addition, the definition of course of conduct expressly excludes constitutionally protected activity. (§ 527.6, subds. (b)(1), (3).) John also contends the trial court ignored the terms of the restraining order

31.

itself, which includes an exception stating the "stay-away order does not prevent you from going to and from your home or place of employment." John further contends his acts in June and July of 2015 involving access to the pump and valves was authorized by a temporary order issued in Fresno County Superior Court case No. 15CECG00967 that was in effect from June 15, 2015, through July 6, 2015.

### 2. *Applicable Legal Principles to Renewal Request*

As stated earlier, one of the principles defining an abuse of discretion addresses whether the trial " 'court's decision is influenced by an erroneous understanding of applicable law.' " (*Cooper*, *supra*, 242 Cal.App.4th at p. 90.) Under that principle, " 'a discretionary order based on an application of improper criteria or incorrect legal assumption is not an exercise of informed discretion and is subject to reversal.' " (*Ibid*.) Here, we consider whether the trial court's renewal order was influenced by an erroneous understanding of applicable law or was based on an incorrect legal assumption.

The trial court's discretionary authority to renew a restraining order is subject to the principle that "[a]n injunction restraining future conduct is only authorized when it appears that *harassment* is likely to recur in the future." (*Harris*, *supra*, 248 Cal.App.4th at p. 496, italics added.) We emphasize this test's reference to "harassment," a term defined in section 527.6, subdivision (b)(3). The test does not ask whether it appears the restrained party's future conduct is likely to violate the terms of the original restraining order. This distinction between *harassment* and the restrictions contained in the original restraining order are significant in this case for two reasons.

First, the fact that John's past conduct may have violated aspects of the restraining order that were unconstitutionally overbroad is not an appropriate basis inferring a likelihood of future *harassment* because that conduct should not have been prohibited in the first place and, moreover, it would not be prohibited if the restraining order was renewed (with the necessary modifications to comply with constitutional requirements).

32.

Second, the trial court's statements during the hearing show that it focused on compliance with the literal term of the restraining order rather than the statutory definition of harassment and whether harassment was likely to recur. The court stated: "The restraining order does not make any exceptions for legitimate purposes. The restraining order is very clear in its 200-yard prohibition and it doesn't allow for legitimate purposes." These statements strongly support the inference that the trial court was not applying the statutory definition of harassment, which refers to conduct "that serves no legitimate purpose." (§ 527.6, subd. (b)(3).) Consequently, the court's evaluation of John's future conduct was not based on applicable law—namely, the statutory definition of harassment. In addition, the court's evaluation of John's future conduct was based on an assumption (or perhaps a determination) that the restraining order satisfied all constitutional requirements. This assumption or determination was incorrect. (See pt. II., *ante*.) This incorrect assumption or determination tainted the court's exercise of discretion, which means its decisions to renew the restraining order and to deny John's motion were " 'not an exercise of informed discretion and [are] subject to reversal.' " (*Cooper*, *supra*, 242 Cal.App.4th at p. 90.)

Accordingly, the decisions must be reversed and the trial court directed to reevaluate Maria's request to renew the restraining order. In other words, the request is "at large" for further proceedings as if it had not been decided in December 2017. (See *Regents of University of California v. Public Employment Relations Bd.* (1990) 220 Cal.App.3d 346, 356–357 [unqualified reversal leaves the case " 'at large' " for further proceedings].)

### 3. *John's Motion to Modify*

In *Yost v. Forestiere* (2020) 51 Cal.App.5th 509 (*Yost*), this court provided an overview of the expedited civil harassment restraining orders authorized by section 527.6 and discussed five safeguards adopted by the Legislature to offset the bluntness or

imprecision of the truncated procedure.  (*Yost*, *supra*, at pp. 520–522.)  One of those safeguards allows either party to bring a motion to terminate or modify the restraining order.  (*Id*. at p. 522; see § 527.6, subd. (j)(1).)

We interpreted section 527.6, subdivision (j)(1) as granting trial courts discretionary authority to determine whether to modify or terminate a civil harassment restraining order.  (*Yost*, *supra*, 51 Cal.App.5th at p. 523.)  Addressing the scope of that discretion, we concluded the grounds for modification included, but were not limited to, the grounds set forth in section 533 for the modification of an ordinary injunction.  (*Yost*, *supra*, at pp. 524, 526.)  Those grounds are a material change in the facts, a change in the law, or "the ends of justice."  (§ 533; see *Yost*, *supra*, at p. 526.)  We further concluded modification requests must be decided on a case-by-case basis after the trial court considers the relevant circumstances.  (*Id*. at p. 527.)  We adopted the principle that "when a trial court, after considering the relevant evidence presented, determines there is no reasonable probability a particular act of harassment will be committed in the future, the court has the discretion to modify the terms of the restraining order addressing that particular act of harassment."  (*Id*. at p. 528.)  We noted that this principle was not an all-encompassing definition of the scope of the trial court's discretion because the procedure for modifying a restraining order allows the trial court to fine tune the order's terms after seeing how the order impacted the protected and restrained parties and their activities.  (*Id*. at p. 528, fn. 6.)

In the context of this case, modification of the restraining order is an appropriate mechanism for addressing the problems of the terms of the restraining order (1) being unconstitutionally overbroad and (2) reaching activity that falls outside the statutory definition of harassment.  Here, the trial court explicitly ruled on John's motion at the December 13, 2017 hearing, stating:  "[W]ith regard to Mr. Wash's motion to modify or terminate the restraining order[, t]he Court is going to deny that motion as provided for in the earlier matter."  Thus, the court did not consider the order's unconstitutionality as a

basis for modification or whether the terms of the restraining order prohibited activity that fell outside the definition of harassment. Accordingly, as in *Yost*, the record reflects the trial court was unaware or misunderstood the full scope of its discretionary authority to modify the terms of the restraining order. (See *Yost*, *supra*, 51 Cal.App.5th at p. 530.) As a result, its order denying John's modification request was " 'not an exercise of informed discretion and is subject to reversal.' " (*Cooper*, *supra*, 242 Cal.App.4th at p. 90.)

In summary, the constitutional infirmities and the absence of an informed exercise of discretion require the reversal of the renewed restraining order and a remand for further proceedings addressing whether the restraining order should be renewed and, if renewed, what its modified restrictions should be.

B.     Recording Images

The further proceedings conducted on remand must include the trial court's consideration of whether to modify the blanket restriction on recording images of protected persons. Any modified restriction should eliminate the redundancy of the "or otherwise intimidate" if that phrase remains repetitive, should avoid any unnecessary impairment of John's constitutional rights, and should allow for recording "that serves [a] legitimate purpose" within the meaning of section 527.6, subdivision (b)(3) because such recording is outside the definition of harassment. Stated in more specific terms, the court must consider, without limitation, (1) whether the restriction on recording images of protected persons is overbroad as applied within the orchard and (2) whether John has a legitimate purpose for recording the image of Maria or her sons when they are in the orchard, near his residence or involved with valves and pipes used to deliver water to the orchard. Based on the record presented, John has made "a showing … that the ends of justice would be served by" modifications narrowing the restrictions on his recording images of protected persons because those restrictions impair his ability to protect his

interests in the orchard and his business. (§ 533.) Also, as noted in our decision affirming the denial of a restraining order against Maria, recording images may have a legitimate purpose and, thus, fall outside the statutory definition of harassment. (§ 527.6, subd. (b)(3).) Therefore, the scope of the restrictions on John's recording images of protected persons must be considered on remand.

C.    Exclusion of Relevant Evidence

1.    *Hearsay Objection*

John contends the trial court erred when it refused to allow his hearsay evidence. He contends hearsay is allowed in hearings involving restraining orders issued under section 527.6.

During John's testimony, Maria's counsel objected to John's stating what Maria's cousin or nephew Juanito said to John on the ground is was hearsay. John responded by saying, "Hearsay is allowed in this type of hearing." The trial court stated: "Mr. Wash, it really is not, so I'm going to sustain the objection." Later in the proceeding, the court sustained hearsay objections to John's testimony about (1) Guy Hutchins crying the first time Maria yelled at him, (2) something Peggy Reimer told him, and (3) something the sheriff or a sheriff's deputy told him. In addition, the court sustained a hearsay objection to reports from the sheriff's office and a declaration by Guy Hutchins.

Section 527.6, subdivision (i) states: "At the hearing, the judge shall receive any testimony that is relevant, and may make an independent inquiry." "This provision has been interpreted to mean hearsay evidence, such as a declaration or police report, is admissible during hearings conducted pursuant to section 527.6. (*Duronslet v. Kamps* (2012) 203 Cal.App.4th 717, 728-729; see *Kaiser Foundation Hospitals v. Wilson* (2011) 201 Cal.App.4th 550, 557.) Under this less formal approach to the admission of evidence, '[b]oth sides may offer evidence by deposition, affidavit, or oral testimony, and the court shall receive such evidence, subject only to such reasonable limitations as are

necessary to conserve the expeditious nature of the harassment procedure set forth by …
section 527.6.' " (*Yost*, *supra*, 51 Cal.App.5th at p. 521.)  Accordingly, the trial court
erred in excluding evidence or striking testimony based on the hearsay objections.

We do not address whether the exclusions of hearsay evidence were prejudicial
because the matter is being remanded on other grounds.  During the hearing on remand,
evidence should not be excluded because it is hearsay.  (See *Schraer v. Berkeley Property
Owners' Assn.* (1989) 207 Cal.App.3d 719, 733, fn. 6 ["Both sides may offer evidence by
deposition, affidavit, or oral testimony, and the court *shall receive* such evidence, subject
only to such reasonable limitations as are necessary to conserve the expeditious nature of
the harassment procedure set forth by [§] 527.6"].)

### 2.     *Declarations*

During the hearing, Maria objected to the admission of declarations of Peggy
Reimer and Guy Hutchins that John submitted.  One objection asserted the declaration
had not been provided before the hearing.  We do not address whether the declarations
were properly excluded on that ground because it is unlikely to arise on remand.  In other
words, it is likely John will be able to serve and file any declarations he wishes to present
prior to the hearing on Maria's renewal request and his motion to terminate or modify the
terms of the restraining order.  (Cf. § 527, subd. (e) [party opposing preliminary
injunction may present affidavits if served at least two days prior to the hearing].)

### D.     Duration of Renewal

### 1.     *Scope of Appellate Review*

John's opening brief raised two questions of statutory construction related to the
duration of the renewed restraining order.  Statutory construction presents questions of
law subject to independent review.  (*Jauregui v. City of Palmdale* (2014) 226
Cal.App.4th 781, 804.)  We resolve these questions of law because they have been
presented upon appeal and they have a reasonable probability of arising again in the

further proceedings conducted on remand. (See Code Civ. Proc., § 43; *Gerawan Farming, Inc. v. Agricultural Labor Relations Bd.* (2018) 23 Cal.App.5th 1129, 1240 [appropriate to provide direction on legal questions likely to recur].)

### 2. Issues Presented

John's first claim of error relating to the duration of the renewal period asserts the maximum period of renewal is three years, not the five years imposed by the trial court. His second claim of error asserts the renewal period begins to run from the expiration date of the original restraining order, not the date the renewal order is entered.

### 3. Three or Five Years

John argues the applicable renewal period for a restraining order issued in March 2014 is determined by the statute in effect on the issuance date and, in this case, that version of the statute authorized renewals "for a duration of not more than three additional years." (Stats. 2013, ch. 158, § 1; former § 527.6, subd. (j)(1).) The change from a maximum renewal period of three years to five years went into effect on July 1, 2014. (See Stats. 2013, ch. 158, §§ 1, subd. (y), 2; Legis. Counsel's Dig., Assem. Bill No. 499 (2013-2014 Reg. Sess.) [statute changed to "extend the order renewal period for up to an additional 5 years"].) Since July 2014, the renewal period has remained five years.

In John's view, applying the 2017 version of section 527.6 to the renewal order made the statute retroactive. (See § 3 ["No part of [the Code of Civil Procedure] is retroactive, unless expressly so declared"].) He raised this issue in the trial court when he argued that nothing in the statute said it was retroactive.

We note that retroactivity is not a simple concept. The California Supreme Court stated "[t]he terms 'retroactive' and 'prospective' … are not always easy to apply to a given statute." (*Quarry v. Doe I* (2012) 53 Cal.4th 945, 955.) "In general, application of a law is retroactive only if it attaches new legal consequences to, or increases a party's

liability for, an event, transaction, or conduct that was completed before the law's effective date. [Citations.] Thus, the critical question for determining retroactivity usually is whether the last act or event necessary to trigger application of the statute occurred before or after the statute's effective date. [Citations.] A law is not retroactive 'merely because some of the facts or conditions upon which its application depends came into existence prior to its enactment.' [Citation.]" (*People v. Grant* (1999) 20 Cal.4th 150, 157.)

The foregoing principles govern our determination of whether the statute was retroactively applied to the facts of this case. Therefore, we consider whether the last act or event triggering the renewal occurred before the statute's effective date of July 1, 2014. This inquiry necessarily considers the legal principle that defines the criteria for renewing a restraining order because this principle identifies the triggering event.

As stated earlier, "restraining future conduct is only authorized when it appears that harassment is likely to recur in the future." (*Harris*, *supra*, 248 Cal.App.4th at p. 496; see *Cooper*, *supra*, 242 Cal.App.4th at p. 90 [reasonable probability of harassment being repeated in the future].) Ordinarily, the assessment of a reasonable probability is based on circumstances as they exist at the time of the renewal hearing. Such was the case here. The trial court properly received evidence of events that occurred after the issuance of the original restraining order, including events occurring after July 1, 2014. This evidence includes Maria's testimony and supporting photographs about events in 2016. Therefore, the version of the statute in effect in 2017 was not applied retroactively in this case—that is, solely to facts in existence before July 1, 2014. Instead, the renewal order was based on an assessment of current circumstances and whether a reasonable probability of repeated wrongful acts existed at the time of the hearing. (See *Burks v. Poppy Const. Co.* (1962) 57 Cal.2d 463, 474 ["a statute is not retroactive merely because it draws upon antecedent facts for its operation"].) Perhaps if the renewal determination

had been based *solely* on events occurring before July 1, 2014, John would have had a stronger argument about retroactivity.

Consequently, under the facts of this case, we conclude the version of the statute in effect in 2017 defined the authority of the trial court in renewing the restraining order, not the version in effect when the initial restraining order was issued. Under the 2017 version, a restraining order "may be renewed, upon the request of a party, for a duration of no more than five additional years .…" (§ 527.6, subd. (j)(1).) Therefore, the trial court did not err when it interpreted the statute to mean the maximum renewal period was five years.

### 4. Starting Date

John's second question of statutory interpretation pertains to the starting date of the renewal period. John contends the renewal period should run from the expiration date of the original restraining order, which in this case was March 20, 2017. Using this date, John argues the renewed restraining order should expire on March 20, 2022, not eight and a half months later on December 13, 2022. Maria's appellate brief argued the maximum renewal period was five years but did not address the specific question of the latest allowable starting date for the five-year renewal period. We have located no case law explicitly addressing the issue.[10]

Statutory construction begins with the words of the statute. (*People v. Castillolopez* (2016) 63 Cal.4th 322, 329.) Here, the relevant text in section 527.6 provides that "[t]he order may be renewed, upon the request of a party, for a duration of no more than five additional years .…" (§ 527.6, subd. (j)(1).) This text does not explicitly identify the starting point of the five-year period. From the language, it could

---

**10** In *Cooper*, *supra*, 242 Cal.App.4th 77, the court did not address when the five-year period began. The trial court exercised its discretion and renewed the restraining order for five years from the date of the renewal hearing (June 17, 2014), which was held *before* the expiration of the restraining order (July 15, 2014). (*Id*. at pp. 84, 88.)

be reasonably inferred that the five years is calculated from the expiration of the original restraining order. Another reasonable interpretation emphasizes the action verb "renewed" and calculates the five years from the date of that act—that is, the date the court signs and files the renewed restraining order.

Because conflicting inferences can be drawn from words used, we conclude the statute is ambiguous. (*Wells Fargo Bank, N.A. v. 6354 Figarden General Partnership* (2015) 238 Cal.App.4th 370, 381 [whether a statute is ambiguous is a question of law].) Generally, statutory ambiguity is resolved by selecting the construction that comports most closely with the apparent intent of the Legislature, seeking to promote the general purpose of the statute and to avoid absurd consequences. (*Conness v. Satram* (2004) 122 Cal.App.4th 197, 202.)

Here, the parties have presented no legislative history or other extrinsic sources that might aid the interpretation of section 527.6. Therefore, our interpretation of the provision addressing the duration of the renewal is based primarily on the wording of that provision, read in context (i.e., considering the statute as a whole) and considering the consequences of the competing interpretations. (*Gutierrez v. Carmax Auto Superstores California* (2018) 19 Cal.App.5th 1234, 1250; see *Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1190 [courts consider the consequences of a particular construction, including its impact on public policy].)

We conclude the use of "no more" and "additional" in the phrase "no more than five additional years" most strongly supports the inference that the renewal period of five years is added onto the period stated for the initial restraining order. Under this interpretation, the maximum length of the renewal period is calculated by adding five years to the original expiration date. As a result, the maximum operative period of a renewed restraining order would be its initial period and "no more than five additional years." (§ 527.6, subd. (j)(1).)

A consequence of this statutory construction is greater uniformity in the application of the statute. First, the expiration date of the renewed restraining order is not affected by any continuance of the hearing on the renewal request. As a result, applicants are not rewarded if they obtain a continuance. Similarly, restrained parties are not penalized if they seek a continuance. Second, the expiration date of the renewed restraining order is not altered by when a renewal request is submitted "within the three months before the order expires." (§ 527.6, subd. (j)(1).) As a result, the protected party has no incentive to wait until near the end of the period to bring a renewal request.

On balance, we conclude the statute should be interpreted to mean a restraining "order may be renewed … for a duration of no more than five additional years" from its original expiration date. (§ 527.6, subd. (j)(1).) Applying this statutory interpretation to the facts presented, we conclude the trial court erred in setting December 13, 2022, as the expiration date of the renewed restraining order. Therefore, in the event the restraining order is renewed after further proceedings on remand, the renewed order should expire on or before March 20, 2022, which is no later than five years from the expiration date of the initial restraining order.

## DISPOSITION

The December 13, 2017 order renewing the restraining order and denying appellant's motion to terminate or modify civil harassment restraining order is reversed and vacated. The matter is remanded to the trial court for further proceedings not inconsistent with this opinion. If the matter is not otherwise resolved, the trial court shall schedule and hold a hearing on Maria's form CH-700 request to renew restraining order and John's motion to terminate or modify civil harassment restraining order after giving the parties an opportunity to file amended papers, including supporting declarations and requests for judicial notice. Upon the vacatur of the December 13, 2017 order renewing the restraining order, Maria's original restraining order shall be reinstated and shall

remain in effect until the trial court rules on Maria's request to renew the restraining order and John's motion to terminate or modify.

Appellant shall recover his costs on appeal.